No. 15,531.

DeHaas *v.* Benesch.
(181 P. [2d] 453)

Decided May 5, 1947.   Rehearing denied June 2, 1947.

Mr. Roy A. PAYTON, Mr. A. W. McHENDRIE, for plaintiff in error.

Mr. CHARLES F. KEEN, for defendant in error.

*In Department.*

MR. JUSTICE STONE delivered the opinion of the court.

EXTENDING some twenty miles along the south side of the Arkansas River, from which it carries a large volume of water for the irrigation of lands, lies the Bessemer Ditch. Below the ditch, seepage water emerges along the slopes and arroyos and flows in a northerly direction toward the river. Such seepage water comes to the surface in considerable quantity on lands owned by defendant Benesch and there collects in a natural depression or swale some quarter-mile in width which extends in a northerly direction through his lands and is known as the Green Arroyo. While the general slope is toward the river, the gradient is so low that the seepage water forms a swamp or morass with

no defined natural water channel, the surface of which is covered with cattails and other swamp vegetation. Crossing the lower end of defendant's land and intersecting the Green Arroyo is the Collier Ditch which has a decreed priority of appropriation of water from the river. Plaintiff DeHaas is a part owner of this ditch which is used to convey water for the irrigation of her lands and those of the other owners lying easterly from those of defendant.

Insofar as the issues here involved are concerned, plaintiff by her complaint alleged in substance that she is the owner of a ditch known as the Haver Ditch and the Haver Ditch Extension No. 1; that therein and therethrough she has gathered and appropriated seepage and waste water arising and flowing along the line of said ditch, including, since 1920, the entire flow in the Green Arroyo; that said water has been beneficially and continuously used to irrigate her lands; that the Haver Ditch and extension merge with the Collier Ditch, and that from the point of merger these ditches flow in a common channel; that the water so appropriated from Green Arroyo has been collected through the Haver Extension or the Collier Ditch; that these waters are tributary to the Arkansas River; that defendant has wrongfully closed the flow of water from Green Arroyo, has diverted it to his own land, and that such diversion constitutes irreparable injury to plaintiff; wherefore she prayed for injunctive relief. Plaintiff further pleaded an adverse use of the water for more than twenty years, but does not here assert any such right.

Defendant by answer made general denial, and particularly denied the construction of the Haver ditch extension in such a manner as to carry the water of the Green Arroyo, and he alleged that the water of Green Arroyo, if ever used by plaintiff, was used by her through the Collier Ditch.

The evidence discloses without substantial controversy that plaintiff and her predecessors in interest have for

many years owned lands lying easterly from and below
Green Arroyo; that her predecessor in 1902 filed a map
and statement of the Haver Ditch claiming as a source
of supply, waste and seepage from the Bessemer Ditch,
but said ditch did not extend sufficiently far to intercept
water from Green Arroyo; that in 1920 plaintiff's prede-
cessor filed map and statement of the Haver Extension
which, if built as platted, extended to the westerly side
of Green Arroyo and would have drained the water
therefrom; that the great flood of 1921 largely oblit-
erated all ditches, interrupted farming on lands in that
neighborhood, and when the ditches were reconstructed,
the Collier Ditch, which had formerly extended across
the Green Arroyo close to the river, was rebuilt farther
to the south, and, from a point east of defendant's land,
approximately on the line of the survey of the Haver
Extension; that part of the old Collier Ditch and numer-
ous other channels were in existence in Green Arroyo
through which the water found its way to the new Col-
lier Ditch; and that the plaintiff and her predecessor in
title and their tenants had used the seepage water from
Green Arroyo for the beneficial irrigation of their lands
at least since the reconstruction of the ditches in 1922
until 1942 when the defendant constructed a ditch ex-
tending north and down the center of Green Arroyo,
with a flume across the Collier Ditch and a built-up
ditch beyond, by means of which he diverted the Green
Arroyo water from plaintiff and used it on his own
lands. Defendant introduced testimony as to use of
Green Arroyo water on the lands now owned by him
for several years prior to 1914 by his father, who then
was a tenant thereon, but he later testified that the
water so used was taken from the Collier Ditch in which
they then owned an interest and neither in defendant's
pleadings nor in his evidence or brief is there any claim
apparent of prior appropriation by virtue of such remote
and temporary use. Defendant further introduced evi-
dence of use of the water on a few occasions by other

farmers, but there was no evidence nor contention of privity between such occasional users and defendant.

After trial of the issues, the court made extended and detailed findings of facts, of which those here pertinent may be summarized as follows: That defendant is the owner of the lands upon which the greater portion of the water in Green Arroyo arises; that a large portion of the water from Green Arroyo has always been allowed to flow into the Collier Ditch; that this water has a distinctive value as domestic water and is being used and has been used by the defendant for livestock consumption; that the greater portion of the water in said arroyo is being carried northward and flumed across the Collier Ditch and used on defendant's lands; that a flood occurred on June 3, 1921, whereby all the ditches were washed out and obliterated; that the Collier Ditch has always crossed the Green Arroyo although now in a different location than before the flood of 1921; that the water from Green Arroyo has flowed into the Collier Ditch in many places; that no construction was ever made of the Haver Extension Ditch No. 1 on defendant's land; that "to assume that it [water of Green Arroyo] ever would, if left to itself, reach the river, is going entirely into the field of conjecture. * * * The Court is unable to find from the evidence and the inspections of the premises that these waters would naturally flow into the Arkansas River if unobstructed, and the court finds that the waters of Green Arroyo are not tributary to the Arkansas River."

Pursuant to such findings of fact, the court by its conclusions of law determined: (1) That the plaintiff could acquire no rights as appropriator to water of Green Arroyo not subject to the rights of the owner of the land upon which the seepage arose under section 20, chapter 90, '35 C.S.A., which provides, "that the person upon whose lands the seepage or spring waters first arise, shall have the prior right to such waters if capable of being used upon his lands;" (2) that plaintiff lost any

rights which could be gained by appropriation, by failing to construct a ditch capable of carrying the water to her lands and by failure to make application in accordance with her filings for twenty years; and, (3) that plaintiff could not predicate any rights to water by use through the Collier Ditch, by reason of the fact that she was only part owner in the ditch and was asserting rights hostile to her co-owner therein. The further conclusions of the court, which had reference to adverse possession, need not be considered since no claim is here made thereunder. Consequent to its findings and conclusions of law, the trial court entered judgment denying injunction with costs to defendant.

Assuming the sufficiency of the pleadings and proof properly to raise the issue, the first of these conclusions is necessarily based on the finding of fact that the waters of Green Arroyo are not tributary to the Arkansas River. The trial court erred in making this finding. There was no substantial evidence that this seepage water did not flow to the river. An engineer who was familiar with the vicinity testified generally as to the Bessemer Ditch, from which the seepage in Green Arroyo arose, as having a flow of around 150 feet and as to its large percentage of seepage "that goes back into the river," and as to the seepage in the Green Arroyo being part of the Bessemer seepage. There was further testimony that the seepage from Green Arroyo was not getting to the river visibly; that it had no definite channel; that it did not reach the river apparently, but would if a channel was provided; that when work was started in those bottoms the water would not reach the river unless there was some underground channel; that the drainage ditch was made to get it to the river; that a witness supposed all swamp water along the river eventually reached the river, but he didn't know; that "it got down in the river along with the rest of the water without any shadow of a doubt; it didn't go up in the clouds"; that it would undoubtedly run into the Arkansas if not

intercepted by someone, and that it would naturally reach the river. Such was the substance of the testimony.

The burden of proof on the issue of whether water is or is not tributary to a stream is upon the party asserting it is not tributary, not upon the one asserting that it is. The natural presumption is, that all flowing water finds its way to a stream. "The burden of proof is upon the one who has discovered certain subterranean water and claiming the same to show that such water is, in fact, 'developed water.' Therefore, whoever asserts that he is entitled to the exclusive use of water by reason of his having discovered and 'developed' the same, must assure the Court by a preponderance of the evidence that he is not intercepting the tributaries of the main stream or other body to the waters of which others are entitled." 2 Kinney on Irrigation and Water Rights (2d ed.), p. 2189, §1206. See, also, 3 Farnham, Waters and Water Rights, p. 2088; *Platte Valley Irr. Co. v. Buckers Co.,* 25 Colo. 77, 53 Pac. 334; *La Jara Ass'n v. Hansen,* 35 Colo. 105, 83 Pac. 644; *Comrie v. Sweet,* 75 Colo. 199, 225 Pac. 214; *Leadville Co. v. Anderson,* 91 Colo. 536, 17 P. (2d) 303. In the case last cited the court said: "The objectors did not have the burden of showing that the water did reach the river before the construction of the tunnel; but, as we have seen, the burden was on the company to prove by clear and satisfactory evidence that the water was produced and contributed to the river by it, and that, if not interfered with, but left to flow in accordance with natural laws, the water would not have reached the Arkansas river." the testimony in the present case, as above summarized, failed to satisfy this burden of proof, and the finding of the court that the water was not tributary was, as the court frankly stated, based on conjecture and lack of evidence to the contrary. Such evidence necessitates a finding that the water was tributary to the river. *Ogilvie Irr. & L. Co. v. Insinger,* 19 Colo. App. 380, 75 Pac. 598.

█ Whatever may be the right of the owner of the lands upon which seepage or spring waters first arise, as against a prior appropriator where such waters are not tributary to a stream, the law is well settled that waters which are tributary to a stream, belong to the stream and are subject to appropriation for beneficial use the same as other waters of the stream. *Nevius v. Smith*, 86 Colo. 178, 279 Pac. 44; *Faden v. Hubbell*, 93 Colo. 358, 28 P. (2d) 247.

█ In the trial court's second mentioned conclusion of law it was again in error. The evidence is undisputed that plaintiff and her predecessors have for many years used the Green Arroyo water in the irrigation of the lands now owned by her. It is true they have been used through the Collier Ditch of which she is only a part owner and which has other and adjudicated rights from the river. However, plaintiff claims her water right through both the Haver and Haver Extension ditch and the Collier Ditch, and the evidence seems to show that for most of their course, since their reconstruction, these ditches coincide. Even if plaintiff and her predecessors built no new ditch, they could make a valid appropriation by means of an existing ditch. *Nicoloff v. Bloom L. & C. Co.*, 100 Colo. 137, 66 P. (2d) 333. The evidence discloses that the waters of Green Arroyo have for many years been gathered through various channels and carried by means of the Collier Ditch to, and beneficially applied on, plaintiff's lands. This is sufficient to constitute a valid appropriation. Whether or not ditches were constructed in accordance with the filings of maps and statements in compliance with statutory provisions, or whether any map and statement was filed or any new or enlarged ditch was actually constructed are matters of evidence only, and not of the substance of the appropriation. Water rights are not based on the filings of maps or statements. Such filings do not constitute appropriations nor lack thereof invalidate them. The statute providing that appropriators shall file map

and statement nowhere declares such filings are essential to a valid appropriation; it declares only that a map and statement so filed shall be prima facie evidence in any court of intent to appropriate. The statute further provides that nothing therein contained shall be construed to the injury of those having rights prior to those of claimants, or so construed as to prevent a proper adjudication of rights in accordance with existing laws governing such adjudications. The purpose and effect of filing must not be extended beyond the statute. *Holbrook Irr. Dist. v. Ft. Lyon Co.*, 84 Colo. 174, 269 Pac. 574; *Baca Irrigating D. Co. v. Model Land & Irr. Co.*, 80 Colo. 398, 252 Pac. 358; *Bean v. Morris*, 159 Fed. 651.

■ ■ As to the third mentioned conclusion of law of the trial court, one ditch may be the carrier of different appropriations of water and of appropriations of differing owners. By proof of her diversion, carriage, and beneficial use of the water, plaintiff established the essential facts of appropriation. Her title to, or right in, the ditch are matters with which neither the defendant nor the courts are now concerned. Her rights and those of other appropriators, through the Collier Ditch or otherwise, are not here presented for determination. As was said in *Olney Springs Drainage District v. Auckland*, 83 Colo. 510, 267 Pac. 605, "Counsel for defendants attack plaintiff's use of the waters of the swale or draw, on the ground that it will or may interfere with the prior rights of other appropriators of water from the Arkansas river, of which the swale is said to be a tributary, but however this may be, such appropriators are not before us; this is not a statutory adjudication of water rights, and the judgment affects only the parties to the suit."

Accordingly, the judgment is reversed and the case remanded with instructions to enter judgment enjoining and restraining defendant and all persons acting through or under him from diverting water from the Green Arroyo by means of the ditch and flume constructed by

him across the Collier Ditch or from in any manner interfering with the flow of the waters of Green Arroyo into the ditches heretofore used for collection and carriage of said waters to plaintiff's lands as the same have been wont to flow, or from interfering with the maintenance by plaintiff of such ditches and laterals as they have been used heretofore. Such further provision, if any, as the court may find justified by the facts and not inconsistent herewith, for the protection of defendant's use of the water for livestock consumption may be included in the decree.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HAYS concur.