No. 15,877.

ARCHULETA *v*. BOULDER AND WELD COUNTY DITCH COMPANY.

(192 P. [2d] 891)

Decided April 5, 1948. Rehearing denied April 26, 1948.

Mr. JOHN R. WOLFF, for plaintiff in error.

Mr. JACOB S. SCHEY, Mr. THEO. D. SCHEY, JR., Mr. GREY SECOR, Mr. H. G. McCARTY, Mr. L. B. FLANDERS, JR., for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

E. P. ARCHULETA brought an action against the Boulder and Weld County Ditch Company, a Colorado corporation, to secure a judgment condemning a right for the carriage of his irrigation water in ditches owned by defendant. Upon trial to the court judgment of dismissal at plaintiff's costs was entered, to review which this writ of error.

The case was presented to the trial court on stipulated facts, which are:

"1. It is agreed that petitioner's claim to the prior use of said water is based solely upon his said water filing

made by him in the Office of the State Engineer of Colorado on January 16, 1946, and that prior to said date he has made no diversion or beneficial use of said water; that petitioner has filed the within action to condemn a right and easement to carry water through respondent's Boulder and Weld Ditch from the appropriation and filing, more particularly set forth and described as exhibit 'A' attached to the petition filed herein; that if the issue of law and fact herein submitted to the Court for its determination shall be determined by a final judgment in this cause in favor of petitioner, it is mutually agreed that the necessity of taking a right and easement in respondent's ditch is necessary and indispensable and that if said issue be determined by said final judgment in favor of respondent no necessity for such use exists.

"2. That respondent claims a prior right to the same water described and set forth in said petitioner's map and filing, by actual diversion and actual prior use thereof by respondent's respective shareholders upon land owned by them, It is hereby agreed that map and statement of the Erie Coal Creek Pipe Line by Respondent was duly filed in the Office of the State Engineer of Colorado on July 10, 1907, claiming the right to divert 9.4 cubic feet of water from Coal Creek, and a map and statement of the Boulder & Weld Seepage Ditch No. 1 by Respondent was filed in the Office of the State Engineer on October 21, 1907, claiming the right to divert 9.5 cubic feet of water draining from swamp lands adjacent to and immediately west of section 12 shown on exhibit 'A' attached to petition filed herein; that copies of each of said described water maps and filings so made by respondent are to be hereto attached as respondent's exhibits 'B' and 'C' and it is hereby agreed that the same are true copies of the originals thereof on file in the Office of said State Engineer.

"3. It is further stipulated and agreed that in each year prior to January 1, 1921, respondent has diverted the available seepage water, arising under each of said

water filings, into the Boulder and Weld Ditch owned by respondent and applied said water to a beneficial use upon the respective lands owned by its stockholders of which petitioner has at all times had full knowledge.

"4. It is further stipulated and agreed that the records and files in the Office of the State Engineer of Colorado do not show any filing whatsoever by respondent on, prior, or subsequent to January 1, 1921 of any supplementary statement in compliance with Sections 190-191 of Chapter 90, CSA (1935) in connection with its claim to the right of appropriation, priority of appropriation, or use of public water or to the initiation of such right or to the application of the doctrine of relation in connection with such right under its filings, claims, maps or plats hereinabove described theretofore filed in the Office of said State Engineer. And it is further stipulated and agreed that respondent has not, either on, prior or subsequent to January 1, 1921 submitted for an adjudication its said mentioned claims in an adjudication proceeding or otherwise.

"5. It is further stipulated and agreed that the respondent, since about the year 1871, has been and now is the owner of said Boulder and Weld Ditch, and that said respondent's ditch diverts water from Boulder Creek at its intake which is located on said Creek, at a point about three-quarters of a mile west of the west line of said Section 12; that said ditch extends from its intake for a distance of about twelve miles to the north and east of said intake and distributes said water to its stockholders owning land along said ditch.

"6. It is further stipulated and agreed that the respondent has a decree for the appropriation and use of water from Boulder Creek in water district No. 6, dated May 1, 1871, for the use of 59.40 cubic feet of water per second of time, which said decree was obtained in the District Court of Boulder County in an adjudication proceeding and that said decree was entered long prior to respondent's water filings and appropriation of seep-

age water hereinabove described. It is further stipulated and agreed that the petitioner is the owner of the N ½ NW ¼ Section 6 Twp. 1 N. R. 68 W Weld County, Colorado and claims the right to said water for application to beneficial use on said land so owned by him and none other.

"7. It is further mutually agreed that, pending the determination of the foregoing issue by the Court, Respondent shall furnish Petitioner, out of the flow of seepage water, mutually claimed, to be owned by the respective parties hereto, 100 cubic inches of water for the irrigation of the north half of the N. W. quarter of Section 6, T. 1, N. R. 68 W., Weld County, Colorado, owned by the petitioner, limited to the 1946 irrigating season, and not exceeding one-half of said flow of seepage water at any one time, subject however to the condition that the petitioner herein shall file a good and sufficient cash or surety bond for the payment to said respondent of the sum of $100 for the use of said water for the 1946 season, in the event the final judgment upon the issue presented by this agreement and stipulation shall award the title and the right of appropriation to said water in controversy between the parties hereto, to said respondent."

The only question necessary for determination here is: Did the failure of defendant to file the supplemental statement for which provision is made in sections 190 and 191, chapter 90, '35 C.S.A., invalidate its claim of right to the waters here involved? As we understand plaintiff's contention, it is that sections 190 and 191, supra, require the filing of supplemental statements as provided therein by all unadjudicated priority claimants under the penalty of a conclusive presumption of abandonment and forfeiture of all rights to the use of water, unless those claimants had submitted their claims for adjudication. It is defendant's contention that the statute is not susceptible of such a construction and that failure to comply with its provisions does not work an abandon-

ment of vested rights under a completed appropriation, but that such failure simply applies to the evidence of appropriation.

Section 190, supra, provides, inter alia: "Any person * * * or corporation * * * who have or claim any rights or privileges as original claimant * * * to the right of appropriation, priority of appropriation, or use in any public waters, or to the initiation of such right, or to the application of the doctrine of relation in connection with such right *under any filing or filings, claim or claims, maps or plats,* heretofore filed in the office of the state engineer, under and by virtue of any of the laws of this state, * * * and which right or rights so claimed have not been heretofore, or shall not be prior to January 1, 1921, submitted for adjudication, adjudicated or merged in, fixed or settled by a conditional or final decree of court in an adjudication proceeding or otherwise, who desire to assert such claim or claims at any time, shall on or before the first day of January, A. D. 1921, file in the office of the state engineer a supplemental statement setting forth: * * *" (Italics ours)

Section 191 is in part as follows:

"Each and every filing and claim for water for irrigation * * * so heretofore filed in the office of the state engineer, and which has not been or shall not be submitted for adjudication or merged into a decree as aforesaid as above provided, or for which a supplemental statement and claim is not filed in the office of the state engineer as provided in the last preceding section, on or prior to the first day of January, 1921 [by amendment, S.L. 1921, p. 482, c. 152, extended to January 1, 1922], shall then be conclusively presumed to have been abandoned and shall thereafter become and be held void and of no effect and the state engineer as to all such claims shall thereupon note upon the records in his office and upon the claims, filings, and plats so in default, that all claims thereunder have been abandoned and canceled.

\* \* \*

"All persons and corporations and claimants, from and after January 1, 1921, shall be barred from asserting or claiming any rights of any kind or nature under any such abandoned claims or filings."

 Sections 5 to 8, inclusive, article 16 of our state Constitution comprise all constitutional provisions having to do with the subject of water rights, and under these sections, and the legislation enacted pursuant thereto, vested rights to waters in natural streams may be acquired. Under section 20, chapter 90, '35 C.S.A., all ditches constructed for the purpose of utilizing waste, seepage and spring waters are to be governed by the same laws relating to priority of right as those ditches constructed for the purpose of utilizing the waters of running streams.

The history of our map and statement acts, in so far as they pertain to irrigation, is interesting. The first act is to be found in Session Laws 1881, beginning at page 161, wherein, in section 2 thereof, it is provided that every person constructing a ditch of a carrying capacity of one cubic foot per second of time shall, within ninety days after the commencement of such construction, file a statement in the office of the county clerk and recorder containing certain information, and, in addition thereto, a map giving certain detailed information, with the proviso that, "no priority of right for any purpose shall attach to such construction or enlargement until such record is made." Section 2 of said act was held unconstitutional in *Lamar Canal Co. v. Amity Land & Irrigation Co.*, 26 Colo. 370, 376, 58 Pac. 600.

Subsequently, section 2, page 162, S.L. 1881, was amended by S.L. 1887, p. 314, and therein it was provided, inter alia, that, "If such statement be filed within the time above limited [ninety days], priority of right of way, and water accordingly, shall date from the day named as the day of commencing work, otherwise, only from the date of the filing of the same;". It will be observed that the 1887 amendment differed radically in

the penalty for failure to file a statement and map in that the penalty affected only the priority.

In 1903, by chapter 126, S.L. 1903, the legislature passed an act relating to the filing of statements and maps which was in many respects similar to the 1887 act, supra. It therein provided, section 6, that a certified copy of the map and statement so filed in compliance with the requirement of that act, "Shall be prima facie evidence in any court having jurisdiction of the intent of the claimant or claimants to make such construction and to utilize such rights as are shown and described in the map and statement; Provided, that nothing herein contained shall be so construed as to dispense with the necessity for due diligence in the construction of such projects, *or to the injury of those having rights prior to those of the claimants;* and, Provided, further, That nothing herein contained shall be so construed as to prevent a proper adjudication of rights in accordance with the existing statutes governing such adjudication." (Italics ours.) The act also validated maps, statements and other documents filed or recorded in substantial compliance with the provisions of section 2 of the act of 1881, supra.

The 1903 act, supra, by omitting the provisions of the 1887 act respecting maps and statements as they affected priorities, and by making the filing of such maps and statements prima facie evidence only, repealed, by implication, the 1887 act in so far as maps and statements affected priorities.

Subsequently, sections 1 to 5 of the 1903 act were amended by chapter 28, S.L. 1911, page 673, being sections 27 to 31, inclusive, chapter 90, '35 C.S.A., and were effective sections of the statute when the 1919 supplemental statement act, chapter 147, S.L. 1919, page 487, was enacted and became effective.

We have heretofore quoted in part sections 190 and 191, chapter 90, '35 C.S.A., which are sections 1 and 2, page 487, S.L. 1919, and are the sections requiring con-

struction in the present litigation. In connection with the 1919 supplemental statement act, there is, in addition to the two sections here in question, a provision for the adjudication of water rights, and the fixing of their relative priorities. It should be kept in mind that section 5 of this 1919 act is as follows: "Sec. 5. Each claimant for appropriation of water within said water district, whether said appropriation shall have been wholly or partially completed, *and though no filing shall have been made in the office of the State Engineer,* shall appear at said general adjudication proceedings and file his statement of claim and offer proof in support thereof before the District Court, * * *" (Italics ours)

The provisions of the supplemental statement act of 1919, supra, were evidently intended to clear the records in the office of the state engineer of all maps and filings, the claims under which had in fact been abandoned by the claimants, and those who took advantage of the provisions of this act could thereby insure notice of all adjudication proceedings affecting their rights which they desired to assert under the filings of maps and statements. This protection was limited and applied only to those "who desired to assert such rights or claims" "under any filing or filings, claim or claims, maps or plats heretofore filed in the office of the State Engineer." In other words, if one who had theretofore asserted any claim to irrigation waters by a compliance with the provisions requiring the filing of statements and maps desired to have his priority fixed in accordance with the provisions of the statute then in force and effect, his supplemental statement under the provisions of the 1919 act should be filed in order that such filing should be considered prima facie evidence in an adjudication proceeding and insure notice thereof.

Under the statement and maps filed by defendant, the construction of its ditches and the application of the waters to a beneficial use, an appropriation was completed and in force and effect when plaintiff's attempted

appropriation was made. To further support us in our determination that the failure to file the supplemental statement provided in the 1919 act, supra, only related to evidence of an appropriation and did not insure notice of the adjudication proceeding, we find in section 5 thereof a provision for the adjudication of priorities where no filing whatever was made, either original or supplemental, in compliance with the terms of the 1919 or any other statute. We also note the title of the statute, which is, "An act to make further provisions for settling the *priority* of rights to the use of water for irrigation and other beneficial purposes."

If, under the 1919 act, "one who had made no filing whatever was entitled to an adjudication and determination of his priority," assuredly one who had made an original filing but had failed to comply with the 1919 act by a supplemental statement, should be afforded the same right and protection, and we so hold.

From the map and statement which plaintiff filed in the office of the state engineer, it appears that "work was commenced by construction, and this water has been beneficially used since the 1st day of June, 1938." According to the stipulated facts, plaintiff made no diversion or beneficial use of the water prior to January 16, 1946, and there is no evidence that he made a diversion or beneficial use of the water at any time prior to the judgment herein. By the statutes in force and effect at the time of the alleged appropriation by plaintiff, it was required that a map and statement be filed in the office of the state engineer within sixty days after the commencement of construction. '35 C.S.A., c. 90, §27. The record shows that these provisions of the statute were wholly disregarded. What, if any, rights plaintiff acquired by reason of the filing of the map and statement, we need not now determine.

██ The construction of a ditch and the application of water to a beneficial use completes an appropriation. Whether any map and statement was actually filed, is a

matter of evidence only and does not constitute the substance of the appropriation. Maps and statements filed in connection with water rights "do not constitute appropriations, nor lack thereof invalidate them." *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453. A compliance with the statutory requirements in question is not strictly a part of the act of appropriation; the appropriation is completed when the ditch or conduit is constructed and the water is diverted therethrough and applied to a beneficial use. The filing of maps and statements under our irrigation statutes is a means of fixing and holding the rights which a party already has acquired by appropriation and are only prima facie evidence of the appropriation. Long on Irrigation, p. 73, §40; 1 Wiel, Water Rights in Western States (3d ed.); p. 437, §411.

We hold that at the time plaintiff filed his map and statement defendant had a completed appropriation and vested right to the use of the waters which plaintiff claimed by his map and statement; that plaintiff's attempted interference therewith by the filing of a map and statement was ineffectual; and that he acquired no rights thereby. We also hold that defendant's failure to comply with the provisions of the 1919 act by filing a supplemental statement as therein provided did not amount to abandonment or in anywise invalidated its appropriation.

The trial court properly ordered a dismissal of the action, and the judgment accordingly is affirmed.

Mr. Justice Hilliard dissents.