## No. 18,128.

THE CRESSON CONSOLIDATED GOLD MINING AND MILLING CO., ET AL. *v.* J. E. WHITTEN, ET AL.

(338 P. [2d] 278)

Decided April 20, 1959.   Rehearing denied May 11, 1959.

Messrs. Burgess & Geddes, for plaintiffs in error.

Messrs. Stinemeyer & Stinemeyer, Mr. H. R. Harward, for defendants in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

Prior to July 7, 1942, the Golden Cycle Corporation, hereinafter referred to as Cycle, original plaintiff in this action, had driven the Carlton Tunnel some five miles into the mountain side in Teller County. The tunnel, located at an elevation of 6893 feet, was driven for the

purpose of draining mines in the Cripple Creek mining district, so that they might be worked at lower levels, and also for the purpose of developing and putting to beneficial use water entrapped in a cone area and from which area water, due to the impervious nature of the rock filling the cone area and the walls thereof, escaped, if at all, in very limited amounts by seepage through small fissures, fractures and veins. The water in the bowl area comes entirely from precipitation upon the surface thereof; precipitation in excess of that entering the bowl escaped over the low points on the lip or rim of the bowl. Water escaping from the bowl by seepage, as stated above, and over the lip of the bowl found its way to Cripple Creek, a tributary to Four Mile Creek which discharges into the Arkansas River.

On July 7, 1942, in an adjudication proceeding in Fremont County, in which all then parties in interest were present, a decree was entered awarding to Cycle:

" * * * the use and consumption, as 'developed' water, for irrigation purposes, so much of the water which had accumulated in the said bowl or crater described in the findings of this court prior to the time when the said Carlton Tunnel of the petitioner penetrated, tapped and began to drain said bowl or crater, and which was then still confined and impounded in said bowl or crater, as can be discharged and released from said bowl or crater by and through said tunnel.

"And it is Considered, Ordered and Adjudged by the Court, that in releasing and withdrawing said accumulated water from said bowl or crater four cubic feet of water per second of time shall at all times be allowed to flow uninterruptedly and constantly from said tunnel at its portal into the stream [Four Mile Creek] into which said tunnel discharges, as part of the natural flow of water in said stream, and that *when the discharge of water from said tunnel, at the portal thereof, shall have been diminished and reduced to four cubic feet of water per second of time the petitioner [Cycle] will then have*

*had and received all of the water awarded it by this judgment and Decree and shall not be entitled to the use or consumption of any more water through or by means of said tunnel, \* \* \*."* (Emphasis supplied.)

During the year 1947, the flow of water from the Carlton Tunnel fell below four cubic feet per second of time, and so remained until some time during the year 1954.

About December 1, 1947, the plaintiff in error, United Gold Mines Co., hereinafter referred to as UGM, commenced work on the Vindicator Lateral Tunnel and Extension of the Carlton Tunnel. In January 1948 the plaintiff in error, The Cresson Consolidated Gold Mining and Milling Co., hereinafter referred to as Cresson, commenced a similar lateral tunnel. These laterals were driven for the dual purpose of draining the mines of the respective owners so they would be more workable, and also for the purpose of developing water to be put to beneficial use.

In November of 1954, due to the opening of these two new laterals, the flow of water from the Carlton Tunnel was increased from its then flow of less than four cubic feet per second to over six feet, and at one time the flow exceeded thirteen feet. When the flow from the Carlton Tunnel again exceeded four feet, Cycle, claiming under its 1942 decree, commenced using all water in excess of four feet flowing from the tunnel. Shortly thereafter holders of adjudicated rights on Four Mile Creek, defendants in error herein, and to whom we refer as Intervenors, claimed that Cycle had no remaining rights and that all waters flowing from the Carlton Tunnel belonged to the holders of adjudicated rights on the Creek. They made complaint of Cycle's use of said water to the defendants in error, O. R. Van Cleve, Water Commissioner, Water District No. 12, and to F. C. Snyder, Division Engineer, Irrigation Division No. 2, and these two ruled that Cycle was entitled to the water in excess of four feet.

Intervenors "appealed" from this ruling and submitted the matter to defendant in error J. E. Whitten, State Engineer, who on March 31, 1955, made his decision in writing, wherein he held that Cycle's rights granted under the decree of 1942 terminated when the flow fell below four feet and it has no further rights under that decree no matter what the future flow might be. Cycle, not satisfied with that ruling, on May 10, 1955, filed Action No. 7378 in the District Court of Fremont County and named as defendants, Whitten, Snyder and Van Cleve, and sought a mandatory injunction requiring them to administer the waters of Four Mile Creek so that Cycle would obtain all the water, in excess of four feet, flowing from the Carlton Tunnel, as provided by the 1942 decree.

Intervenors are holders of adjudicated water rights on Four Mile Creek and, as such, vitally interested in who gets the water flowing from the Carlton Tunnel into Four Mile Creek. Waters from Four Mile Creek had been over appropriated long prior to 1942, some of the decreed rights dating back to the early '60s.

On August 28, 1956, Intervenors filed a motion in the above Action No. 7378, setting forth the fact that Cresson and UGM had built bulkheads in their tunnels which impounded, stopped and curtailed the flow of water in the Carlton Tunnel, and to which water Intervenors claimed to be entitled in accordance with their decreed rights. They requested that Cresson and UGM be joined as indispensable parties.

On September 5, 1956, Intervenors filed their motion seeking a temporary restraining order and preliminary injunction restraining Cycle from interfering with the flow of water in the Carlton Tunnel. The temporary restraining order was granted ex parte, on condition that bond of $500.00 be furnished and the matter set for hearing on temporary injunction on September 8, 1956. No further proceedings have been had with reference to Cycle.

On September 8, 1956, an order was entered directing that Cresson and UGM be brought in as indispensable third party defendants.

On September 11, 1956, the Intervenors filed a third party complaint against Cresson and UGM, setting forth in substance that Cresson and UGM, as owners of lateral tunnels, claimed water developed thereby, and had in Case No. 7512, in the District Court of Fremont County, sought to have their rights adjudicated, and that such cause is still pending and undetermined. That on or about August 26, 1956, Cresson and UGM had built bulkheads in their tunnels which had the effect of stopping the flow of water in the Carlton Tunnel, and by so doing had caused the flow of water to drop from in excess of six cubic feet per second to less than two feet. They asked for a temporary restraining order and preliminary injunction, and a mandatory injunction requiring Cresson and UGM to release water stored behind said bulkheads at the rate of twenty-five feet per second.

On September 15, 1956, Cresson and UGM filed a motion for change of venue from Fremont to Teller County, setting forth that the tunnels and impounded water are in Teller County, that the acts complained of were done in Teller County, and that Teller rather than Fremont County was the proper venue. This motion was denied on the day filed.

On September 15, 1956, Cresson and UGM filed their motion to dismiss the third party complaint against them, for the reason that they had been improperly joined, were actually "dragged in by their heels" into a lawsuit in which they had no interest whatsover. On the same day as filed, this motion was denied.

On September 15, 1956, Cresson and UGM filed their answers and counterclaims, alleging that the water in question is nontributary developed water; that it belongs to Cresson and UGM and that Intervenors have no right thereto. They ask that they be decreed to be the owners of said water; that the Intervenors be enjoined from the

use thereof, and that a complete adjudication be had of all the rights of all parties to the action.

On September 15, 1956, the court entered a preliminary injunction enjoining Cresson and UGM from interfering with the flow of water from the Carlton Tunnel or the laterals thereto, and also entered a preliminary mandatory injunction directing Cresson and UGM to release the water impounded at the rate of ten cubic feet per second. Bond of $1000.00 was required.

On October 4, 1956, Whitten, Snyder and Van Cleve filed their reply to the counterclaims of Cresson and UGM, setting forth that neither claimant has any adjudicated water rights and therefor they cannot recognize or give credit to any such claimed rights.

On October 14, 1956, the Intervenors filed their reply to Cresson's and UGM's counterclaims and alleged that the waters in dispute are not "developed" or "produced" waters, but are in fact waters tributary to Four Mile Creek and subject to use pursuant to decrees affecting the waters of said creek.

On October 15, 1956, Cresson and UGM filed their motion to stay and suspend the preliminary injunction and preliminary mandatory injunction, and on the same day filed their motion for a preliminary mandatory injunction directing Whitten, Snyder and Van Cleve to distribute the waters in question as developed and nontributary waters, and for a preliminary injunction restraining Intervenors from using said waters.

On October 17, 1956, after further hearing the motion for stay and suspension was denied, and on the same day Cresson's and UGM's motions for preliminary injunction and preliminary mandatory injunction were denied.

On November 23, 1956, Cresson and UGM filed their designation of record.

On May 17, 1957, Whitten, Snyder and Van Cleve filed a disclaimer in this court; so now none of the original

parties to the action are before us, but only the Intervenors and the third party defendants.

Without exception the rulings of the trial court were in favor of the Intervenors and against Cresson and UGM, both of which made timely objections.

We will deal with only one of the numerous questions presented as grounds for reversal, and that is the question of the propriety of the temporary injunction and the temporary mandatory injunction. These were entered after a hearing. The parties agreed upon most of the facts; namely, that Cresson and UGM had driven lateral tunnels and by so doing had caused water to flow into the Carlton Tunnel and from thence into Four Mile Creek; that on March 12, 1956, Cresson and UGM filed their petition in the District Court of Fremont County, seeking an adjudication decree that they are the owners of and entitled to the use of all waters reaching the portal of the Carlton Tunnel in excess of four cubic feet per second; they predicate their claim on the fact that said excess is developed water and that the same is nontributary to any stream.

These claims remained unheard and undetermined at the time of hearing on the injunction matters. Cresson and UGM, at the hearing on the application for injunction, offered to prove that placing of the bulkhead only served to preserve the status quo and served the same purpose as the granite walls that had been pierced by the tunnel; they also offered to prove that the waters involved were developed waters, nontributary, and that they were the property of Cresson and UGM; that they were entitled to the use and control thereof, and that they should not be enjoined from using the same as they saw fit. This tender of proof was rejected by the trial judge, who took the position that he would consider no evidence as to the rights of ownership, use, control or rights to water other than rights that had been adjudicated. In this the trial court was in error, and because

of this error the judgment must be reversed and the injunctive orders vacated.

Intervenors, in seeking injunctive relief, claimed that as adjudicated owners of the waters tributary to Four Mile Creek, they were entitled to the use of waters flowing from the Carlton Tunnel; they claimed that Cresson and UGM had and were interfering with the flow of said water, and had built bulkheads to impound and had impounded the waters. They demanded twofold injunctive relief: (1) that Cresson and UGM refrain from interfering with the flow of said water; and (2) that they release the impounded water at the rate of twenty-five cubic feet per second. Cresson and UGM admitted that Intervenors were entitled to the waters tributary to Four Mile Creek, but alleged that the waters which they were impounding were "developed" waters, nontributary to Four Mile Creek; that they were the owners of, in possession of, and entitled to the use of said waters and entitled to store them or make such other disposition thereof as they might choose, and that the bulkheads only serve to maintain the status quo of retaining the water in the cone where it was prior to driving the laterals.

If Cresson and UGM owned, were in possession of or entitled to the use of the water in question, then clearly no injunction should have been granted. There is no question Intervenors were entitled to the use of the waters *tributary* to Four Mile Creek; they had decrees to that effect. Cresson and UGM admit this, but contend that the waters in question are nontributary and are developed waters. So the whole case turns on the question of fact, whether the waters are tributary. If they are, then the rights to the use thereof have all been adjudicated and are governed by the adjudication decrees. If the waters are wholly nontributary, as contended for by Cresson and UGM, then the adjudications concerning the waters tributary to Four Mile Creek are entirely irrelevant. In order for the trial judge to make

any intelligent ruling on the application for injunctive relief, he had to know whether Intervenors' claims were superior or inferior to the claims of Cresson and UGM. In order to determine that question he had to know whether the waters were tributary to Four Mile Creek. He accepted evidence of Intervenors tending to prove that the waters were tributary; he indulged, and properly so, in a presumption that they were tributary. In *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453, this court said:

"The burden of proof on the issue of whether water is or is not tributary to a stream is upon the party asserting it is not tributary, not upon the one asserting that it is. The natural presumption is, that all flowing water finds its way to a stream. 'The burden of proof is upon the one who has discovered certain subterranean water and claiming the same to show that such water is, in fact, "developed water." Therefore, whoever asserts that he is entitled to the exclusive use of water by reason of his having discovered and "developed" the same, must assure the Court by a preponderance of the evidence that he is not intercepting the tributaries of the main stream or other body to the waters of which others are entitled.' 2 Kinney on Irrigation and Water Rights (2d ed.), p. 2189, §1206. See, also, 3 Farmham, Waters and Water Rights, p. 2088; *Platte Valley Irr. Co. v. Buckers Co.,* 25 Colo. 77, 53 Pac. 334; *La Jara Ass'n v. Hansen,* 35 Colo. 105, 83 Pac. 644; *Comrie v. Sweet,* 75 Colo. 199, 225 Pac. 214; *Leadville Co. v. Anderson,* 91 Colo. 536, 17 P. (2d) 303. * * *."

See, also, *Safranek v. Limon,* 123 Colo. 330, 228 P. (2d) 975. Intervenors having presented their evidence, it was incumbent on Cresson and UGM to offer evidence in support of their contentions that the waters were nontributary and actually developed waters to the use of which they were entitled. The trial judge erroneously ruled that no proof of such fact could be made, except by an adjudication decree.

██ ˙A decree in a water adjudication is only confirmatory of pre-existing rights; the decree does not create or grant any rights; it serves as evidence of rights previously acquired.

This court, in *Black v. Taylor,* 128 Colo. 449, 264 P. (2d) 502, said:

" * * * Is it essential to the acquisition of a water right that the claimant must file maps of his ditches, participate in water adjudications, and secure a decree of priority?

"This question is answered in the negative. As between parties whose rights to the use of water never have been formally adjudicated, neither can claim an advantage over the other by reason of the absence of any decreed priorities in connection with the water in controversy. Our court said in *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453: 'Whether or not ditches were constructed in accordance with the filings of maps and statements in compliance with statutory provisions, or whether any map and statement was filed or any new or enlarged ditch was actually constructed are matters of evidence only, and not of the substance of the appropriation. Water rights are not based on the filings of maps or statements. Such filings do not constitute appropriations nor lack thereof invalidate them. The statute providing that appropriators shall file map and statement nowhere declares such filings are essential to a valid appropriation; it declares only that a map and statement so filed shall be prima facie evidence in any court of intent to appropriate.' "

In *Archuleta v. Ditch Co.,* 118 Colo. 43, 192 P. (2d) 891, it is said:

"The construction of a ditch and the application of water to a beneficial use completes an appropriation. Whether any map and statement was actually filed, is a matter of evidence only and does not constitute the substance. of the appropriation. Maps and statements filed in connection with water rights 'do not constitute ap-

propriations, nor lack thereof invalidate them.' *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453. A compliance with the statutory requirements in question is not strictly a part of the act of appropriation; the appropriation is completed when the ditch or conduit is constructed and the water is diverted therethrough and applied to a beneficial use. The filing of maps and statements under our irrigation statutes is a means of fixing and holding the rights which a party already has acquired by appropriation and are only prima facie evidence of the appropriation. Long on Irrigation, p. 73, §40; 1 Wiel, Water Rights in Western States (3d ed.), p. 437, §411."

Cresson and UGM, unwilling parties to a lawsuit, were entitled to defend their position by any kind of admissible evidence. They offered evidence which, if true, would constitute a complete defense to Intervenors' application for injunctive relief. Intervenors' decrees were for waters tributary to Four Mile Creek. If the waters in question were nontributary, Intervenors' decrees gave them no rights to said waters. This Cresson and UGM alleged by way of defense, and proof thereof should have been admitted.

Here Cresson and UGM had no decrees, and yet all of the facts entitling them to decrees might well have existed and such facts should have been admitted. The right to the use of water accrues by virtue of acts in putting the water to a beneficial use or in producing and developing nontributary water. An adjudication only confirms that which has already been accomplished.

Clearly, the Intervenors on the one hand and Cresson and UGM on the other could not both be entitled to the water in question. The court was called upon to decide which had the right or superior right, and his refusal to consider evidence offered by Cresson and United Gold Mines deprived them of due process and defeated the purpose of the trial.

In *Public Utilities Commission v. Donahue,* 138 Colo. 492, 335 P. (2d) 285 (decided February 9, 1959), we

stated that any admissible evidence having probative value should be considered in making a finding of fact, and therein quoted the following language from American Jurisprudence:

"The object for which evidence is offered in the trial of a cause is to ascertain the truth concerning the facts in issue, and the fundamental basis upon which all rules which govern its admission or exclusion must rest, if they are to rest upon reason, is their adaptation to the development of the truth of such facts." — 20 Am. Jur. 34, §3.

"It [the legislature] must, however, in prescribing the rules of evidence, in either civil or criminal cases, afford each party a fair opportunity to present his case and to submit all the facts pertinent thereto. The legislature is not permitted, under the pretense of regulating evidence, to establish rules of evidence which prevent a party from exhibiting his rights or deny him the opportunity of a fair trial by virtually excluding evidence in his behalf; to do so would substantially deprive him of due process of law." — 20 Am. Jur. 38, §8.

We decide and hold that it was reversible error to exclude the testimony offered by Cresson and UGM for the purpose of showing their right and Intervenors' lack of right to the water in question. We do not determine or decide any of the other questions presented in the record.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

Mr. Justice Sutton does not participate.