235 P.3d 296 (2010)
Concerning the Application for Water Rights of the City and County of Broomfield.
The CITY AND COUNTY OF BROOMFIELD, a county and Colorado municipal corporation, Applicant-Appellee
v.
The FARMERS RESERVOIR AND IRRIGATION COMPANY, a Colorado corporation, Opposer-Appellant and
The Brighton Ditch Company, City of Aurora, Central Colorado Water Conservancy District, City of Englewood, City of Thornton, City of Westminster, East Cherry Creek Valley Water and Sanitation District, Public Service Company of Colorado, United Water and Sanitation District, Lupton Bottom Ditch Company, Lupton Meadows Ditch, New Coal Ridge Ditch Company, New Consolidated Lower Boulder Reservoir, Platte Valley Irrigation Company, South Adams Water & Sanitation District, and City of Boulder, Opposers-Appellees and
James Hall, Division Engineer, Water Division 1, Appellee Pursuant to C.A.R. 1(e).
No. 09SA178.
Supreme Court of Colorado, En Banc.
June 28, 2010.
*297 Harvey W. Curtis & Associates, Harvey W. Curtis, David L. Kueter, Sheela S. Stack, Englewood, Colorado, Attorneys for Applicant-Appellee City and County of Broomfield, a county and Colorado municipal corporation.
Law Office of Akolt and Akolt, LLC, John P. Akolt, III, John C. Akolt, II, Brighton, Colorado, Attorneys for Opposer-Appellant Farmers Reservoir and Irrigation Company, a Colorado corporation.
No appearance on or behalf of Opposers-Appellees Brighton Ditch Company, Central Colorado Water Conservancy District, City of Englewood, City of Thornton, City of Westminster, East Cherry Creek Valley Water and Sanitation District, Public Service Company of Colorado, United Water and Sanitation District, Lupton Bottom Ditch Company, Lupton Meadows Ditch, New Coal Ridge Ditch Company, New Consolidated Lower Boulder Reservoir, Platte Valley Irrigation Company, South Adams Water & Sanitation District, and City of Boulder; and Appellee Pursuant to C.A.R. 1(e) James Hall, Division Engineer, Water Division 1.
Justice BENDER delivered the Opinion of the Court.

I. Introduction
In this appeal, the Farmers Reservoir and Irrigation Company ("FRICO") asks us to review the water court's finding that the City and County of Broomfield's ("Broomfield") application for a change in the use of water rights would not injuriously affect the water rights of others. FRICO alleges that the water court erred by not considering numerous tables and calculations that FRICO included in its post-trial proposed decree. The water court characterized FRICO's post-trial tables and calculations as new evidence not subject to cross-examination. FRICO disputes this characterization and argues that its post-trial submissions constitute analysis of evidence presented at trial. We defer to the water court's findings unless the evidence is wholly insufficient to support those findings. Pagosa Area Water & Sanitation Dist. v. Trout Unlimited, 219 P.3d 774, 779 (Colo. 2009). Because FRICO's tables and calculations were not introduced at trial, the record supports the trial court's finding that they were new evidence. Based on our independent review of the evidence presented at trial, we conclude that the record amply supports the water court's finding that Broomfield satisfied its burden of proving by a preponderance of the evidence that its application for a change in the use of water rights would not injure the water rights of others. Hence, we affirm the water court's findings.
*298 As a separate issue, FRICO appeals the water court's holding that accretions to a net-losing ditch are not subtracted from the historic beneficial consumptive use of a water right. FRICO agrees with this holding and asks this court to affirm the water court. We hold that FRICO has not presented adequate grounds for an appeal on this issue because it is not seeking the reversal, modification, or correction of the water court's holding, as required by Rule 1(d) of the Colorado Appellate Rules. Because both Broomfield and FRICO agree with the trial court's holding, FRICO presents no dispute for us to resolve. Accordingly, we decline to review the water court's holding regarding accretions to a net-losing ditch, and we affirm the remaining findings of fact, conclusions of law, and judgment of the water court.

II. Facts and Proceedings
On November 30, 2005, Broomfield and Pulte Homes Corporation ("Pulte") filed an application to change the use of certain water rights. These water rights include 1.82 shares in the Brighton Ditch Company, a 0.5 share in the Lupton Bottom Ditch Company, and 116 shares in the Lupton Meadows Ditch Company ("subject water rights"). FRICO and other parties filed timely statements of opposition to the application. Pulte later conveyed its interest in the subject water rights and withdrew as an applicant.
The water court scheduled a trial to determine whether Broomfield's application for a change in the use of water rights would injure others' water rights. Before trial, Broomfield submitted an eighteen-page proposed decree, which detailed Broomfield's position regarding the points of diversion, sources, amounts, and historic beneficial consumptive uses of the subject water rights. To support this proposed decree, Broomfield offered several exhibits at trial, including decrees from the late 1800s and early 1900s that adjudicated the subject water rights. In addition, Broomfield called several witnesses to testify, including: Howard Cantrell, an owner of the lands irrigated by the Lupton Bottom Ditch Company and the Lupton Meadows Ditch Company; Jennifer Ash-worth and Gregory Roush, both of whom were qualified as expert witnesses in water resources and water rights engineering; Robert Stahl, former Water Commissioner for District Two; and Robert Carlson, Water Commissioner for District Six. FRICO called no witnesses to testify at trial and submitted one exhibit into evidence. FRICO's exhibit contained annual diversion records from 1887 to 1909 and showed that the Lupton Bottom Ditch varied in length from year to year.
After the parties finished presenting evidence at trial, the water judge discussed the best way to proceed considering that FRICO did not present any evidence from witnesses. The water court initially directed FRICO to prepare a position statement but, in a later minute order, asked FRICO to submit a proposed decree, which would follow the same organization as Broomfield's proposed decree and would highlight the portions disputed by FRICO. The water court further instructed FRICO to confine any argument to the disputed portions of the proposed decrees. FRICO filed a fifty-page document that contained proposed language for the decree and an argument section. This document included calculations and tables that FRICO created after trial.
FRICO made four arguments in its proposed decree that are relevant to this appeal. The first three arguments alleged that previous owners used water rights on certain properties in a way that unlawfully enlarged the originally decreed rights. In particular, FRICO maintained that the following uses unlawfully enlarged the water rights beyond their original appropriations: (1) the use of the 1893 Slate Ditch right on the Salinas Parcel beyond the 1.75-mile length of the original J & S Ditch, as adjudicated in 1918; (2) the use of the 1863 Lupton Bottom Ditch right on lands beyond the original four-mile length of the Lupton Bottom Ditch; and (3) the use of the 1863 Brighton Ditch right on the lands beyond the original five-mile length of the Brighton Ditch. As a final argument, FRICO alleged that water from Boulder Creek was diverted and stored out of priority in the Coal Ridge Waste Reservoir and that this water should be excluded when calculating historic beneficial consumptive use.
*299 The water court rejected these arguments in its findings of fact, conclusions of law, and judgment. The water court made several determinations based on the evidence about the historic beneficial consumptive use of the various water rights. In its analysis, the water court refused to consider the tables and calculations in FRICO's proposed decree. The water court explained that "[t]he basis for FRICO's tables and calculations [is] not apparent" and "Broomfield did not have the chance to cross-examine the creator of this analysis." Even though the water court disregarded these tables and calculations, it considered FRICO's underlying arguments. The water court found that Broomfield's application for a change in the use of water rights would not injuriously affect the water rights of others. In addition to its factual findings, the water court made one legal ruling that is relevant to this appeal: it held that accretions to a net-losing ditch should not be subtracted from the historic beneficial consumptive use of a water right.
In this appeal, FRICO argues that the trial court erred by refusing to consider the tables and calculations that FRICO submitted in its proposed decree. As a remedy, FRICO asks this court to remand this case to the water court with instructions that it consider the tables and calculations in FRICO's proposed decree. Further, FRICO appeals the water court's legal ruling concerning accretions to a net-losing ditch. Instead of asking our court to reverse, modify, or correct the water court's legal ruling, FRICO asks us to affirm this ruling.

III. Analysis

A. Injury to the Water Rights of Others
FRICO argues that the water court erred in finding that Broomfield's application would not injuriously affect the water rights of others. FRICO bases this allegation on the water court's refusal to consider tables and calculations, which it argues were based on evidence presented at trial and were submitted in FRICO's post-trial proposed decree. The water court ruled that Broomfield had no opportunity to cross-examine the creators of these tables and calculations, and the water court therefore refused to consider this evidence. As explained below, we defer to the water court's findings of fact unless the evidence is wholly insufficient to support those determinations. Evaluating each of the issues that FRICO raises, we conclude that the evidence supports the water court's findings, and therefore, we affirm those findings.

1. Legal Standards
The water court shall approve an application for a change of water rights if "such change . . . will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right." § 37-92-305(3)(a), C.R.S. (2009). The applicant for a change of water right bears the initial burden of establishing a prima facie case that the proposed change will not have an injurious effect on others' water rights. Farmers Reservoir & Irrigation Co. v. Consol. Mut. Water Co., 33 P.3d 799, 811 (Colo.2001). Once the applicant successfully meets this initial burden, the opposers have the burden of going forward with evidence that the proposed change will result in injury to existing water rights. Id. If the opposers present contrary evidence of injury, then the ultimate burden of showing the absence of injurious effect by a preponderance of the evidence remains with the applicant. Id. at 812. The issue of injurious effect is inherently fact specific, and we require the water court to make findings on this issue. Id. In evaluating whether a proposed change will have an injurious effect, the water court may have to make determinations about the historic beneficial consumptive use of the water rights in question. See, e.g., Pueblo W. Metro. Dist. v. Se. Colo. Water Conservancy Dist., 717 P.2d 955, 958-60 (Colo.1986).
We defer to the water court's findings of fact unless the evidence is wholly insufficient to support those determinations. Pagosa Area Water & Sanitation Dist. v. Trout Unlimited, 219 P.3d 774, 779 (Colo. 2009). This is a highly deferential standard that recognizes the water court's unique ability to evaluate the evidence and make factual determinations in complex water allocation decisions. Id. We defer to the water court's *300 finding that FRICO's post-trial tables and calculations were new evidence because they were not introduced at trial. Therefore, in evaluating each of FRICO's arguments, we rely only upon the evidence presented at trial, not the tables and calculations in FRICO's proposed decree, to determine whether the record supports the trial court's findings.

2. Slate Ditch
FRICO argues that Broomfield's calculation of the historic beneficial consumptive use of the water from the Slate Ditch improperly included water used on the Salinas Parcel. The water court considered this argument and ultimately rejected it, relying on evidence presented at trial.
The evidence at trial showed that Broomfield owns 115 shares out of 210 shares in the Lupton Meadows Ditch Company. The Lupton Meadows Ditch Company owns a right to use 7/50ths of six cubic feet per second ("c.f.s.") of water in the Slate Ditch with a priority date of 1893 and a right to use six c.f.s. of water in the Slate Ditch with a priority date of 1917. FRICO argues that the right conferred in the 1893 appropriation excluded water used on the Salinas Parcel.
The water court considered two decrees and witness testimony in finding that both the 1893 and 1917 water rights were appropriated for use on lands that included the Salinas Parcel. According to a 1918 decree, the 1893 appropriation was for irrigation of "three hundred acres" of land. A second decree from 1924 stated that the 1917 appropriation was also for the irrigation of three hundred acres of land. Jennifer Ashworth, Broomfield's expert witness, testified that the Salinas Parcel is within the three hundred acres referred to in both decrees. Moreover, Howard Cantrell, who owned the lands irrigated by the Lupton Meadows Ditch Company, testified that both the 1893 and 1917 appropriations were historically used on the Salinas Parcel. Thus, the record supports the trial court's finding that both the 1893 and 1917 appropriations included water used on the Salinas Parcel.

3. Lupton Bottom Ditch
The water court found that the 1863 Lupton Bottom Ditch right permits the use of water on parcels of land within eleven miles of the headgate. FRICO contends that the 1863 Lupton Bottom Ditch right is limited to use on parcels within four miles of the headgate. To support this claim, FRICO submitted analysis of the evidence relating to the historical development and the use of senior priority rights in the Lupton Bottom Ditch. The water court refused to consider this analysis because "[t]he basis of FRICO's tables and calculations [is] not apparent" and "Broomfield did not have the chance to cross-examine the creator of this analysis."
The water court relied on several pieces of evidence to conclude that the 1863 appropriation extended to use on property along the entire eleven-mile stretch of Lupton Bottom Ditch, instead of property along a four-mile stretch. First, the water court considered a decree from 1883 and the statement of claim filed in that case. The statement of claim preceding this decree said that the ditch was eleven miles long, not four. The decree also recognized that the ditch had been extended from four miles to eleven miles. While a decree does not create or grant any rights, it serves as evidence of pre-existing rights. Cresson Consol. Gold Mining & Milling Co. v. Whitten, 139 Colo. 273, 283, 338 P.2d 278, 283 (1959) ("A decree in a water adjudication is only confirmatory of pre-existing rights; the decree does not create or grant any rights; it serves as evidence of rights previously acquired."). Second, the water court considered the testimony of Howard Cantrell, who owned the property served by the Lupton Bottom Ditch Company. He testified that the Lupton Bottom Ditch extended eleven miles.[1] Thus, the record provides ampie *301 support that the 1863 right to the Lupton Bottom Ditch extended to parcels within eleven miles of the headgate.

4. Brighton Ditch
The water court found that the 1863 Brighton Ditch right included water that has been historically used on parcels beyond five miles of the headgate. These parcels include the Asphalt Paving Company ("APC") Parcel, located approximately five miles from the headgate, and the Hein Parcel, located approximately eight miles from the headgate. FRICO argues that the 1863 Brighton Ditch right permitted the use of water no further than five miles from the headgate, and thus the trial court could not consider the use of water on the APC and Hein Parcels when it calculated the historic beneficial consumptive use.
The water court, in analyzing FRICO's argument, referred to an 1883 decree that recognized the 1863 priority to use the Brighton Ditch.[2] This decree did not limit the use of the 1863 right to any particular length of the ditch. Thus, the water court could have construed the lack of a restriction in the 1883 decree as evidence that the 1863 right extended beyond five miles. Further, Jennifer Ashworth, who was qualified as an expert, testified that the Brighton Ditch was eleven miles long, which means it was long enough to reach the APC and Hein Parcels. Thus, the record supports the water court's holding that the 1863 right included water used on both parcels.
FRICO further argued to the water court that quantification of the historic beneficial consumptive use of water on the APC and Hein Parcels must be based on the amount of water used on those parcels prior to 1930. The water court instead relied upon Jennifer Ashworth's study of diversions from 1950 to 1990. The water court identified three reasons that Ashworth selected these years: the Office of the State Engineer had readily available electronic diversion data for these years; an augmentation plan that began in 1991 was not reflected in these years; and the period included sufficient wet, dry, and average years. Although the water court could have relied on other data for calculating historic beneficial consumptive use, these three reasons bolster the water court's decision to rely on Jennifer Ashworth's study. Hence, the record supports the water court's finding that the 1863 Brighton Ditch right includes water used on the APC and Hein parcels, and the record justifies the water court's reliance on Ashworth's method for calculating historic beneficial consumptive use.

5. Coal Ridge Waste Reservoir
FRICO argues that some water from the Coal Ridge Waste Reservoir should be excluded in the calculation of historic beneficial consumptive use because that water was diverted from Boulder Creek and stored out of priority. According to FRICO, approximately fifty-nine percent of the water stored in the Coal Ridge Waste Reservoir was unlawfully filled with tailwater and seepage from the Lower Boulder and Coal Ridge Ditches. FRICO made this argument to the water court and supported it by submitting tables containing detailed calculations after trial. The water court disregarded these tables because FRICO created them after trial and failed to present them as evidence at trial.
The record supports the water court's determination that the water was diverted in priority from Boulder Creek and was stored lawfully in the Coal Ridge Waste Reservoir. The water court cited a 1935 decree that granted the Coal Ridge Waste Reservoir a water right with a diversion rate of sixty c.f.s. from Boulder Creek, which amounts to a storage right of 199.04 acre-feet. The Coal Ridge Waste Reservoir and the Boulder Creek diversion point are in different districts, so different commissioners maintain the diversion and storage records. Robert Carlson, the Water Commissioner for District Six, testified that the water from Boulder *302 Creek was diverted in priority. Robert Stahl, the Water Commissioner for District Two, also testified that, during his tenure, the Coal Ridge Waste Reservoir stored water in priority under that Boulder Creek water right. Further, Stahl testified that he never recorded any tailwater from the Lower Boulder and Coal Ridge Ditches in the Coal Ridge Waste Reservoir. This evidence is sufficient to support the water court's finding that water from Boulder Creek was diverted and stored in the Coal Ridge Waste Reservoir in priority.

B. Accretions to a Net-Losing Ditch
FRICO appeals the water court's holding that accretions to a net-losing ditch should not be subtracted from the historic beneficial consumptive use. In its brief, FRICO states that it "favors the [the court's] determination ... [but] seeks consistency of the legal principle among all ditches, both in change cases and in daily administration of canals." FRICO implies that other water courts have concluded that seepage gains to a net-losing ditch should be subtracted from historic beneficial consumptive use.[3] In essence, FRICO appeals the water court's holding but asks this court to affirm that holding.
Under Colorado Appellate Rule 1(d), a party must state the grounds upon which he or she relies "in seeking a reversal or modification of the judgment or the correction of adverse findings, orders, or rulings of the trial court." (Emphases added). In prior cases, we have dismissed appeals because the appellant was not an "aggrieved party." See, e.g., Miller v. Reeder, 157 Colo. 134, 135, 401 P.2d 604, 605 (1965); Camenisch v. Nuccitelli, 150 Colo. 141, 142, 372 P.2d 85, 85 (1962). In Miller, our court explained the rationale behind this principle as follows:
Appeals are not allowed for the mere purpose of delay, or to present purely abstract legal questions however important or interesting, but to correct errors injuriously affecting the rights of some party to the litigation. Only parties aggrieved may appeal. The word "aggrieved" refers to a substantial grievance; the denial to the party of some claim of right, either of property or of person, or the imposition upon him of some burden or obligation.
157 Colo. at 136, 401 P.2d at 605 (quoting Wilson v. Bd. of Regents, 46 Colo. 100, 100, 102 P. 1088, 1089 (1909)).[4]
Applying the requirement from Colorado Appellate Rule 1(d) and the principle expressed in Miller, we hold that FRICO has not presented adequate grounds for an appeal because it is not seeking the reversal, modification, or correction of the water court's holding. Rather, FRICO seeks our review to affirm the water court so that its holding may be used as precedent in other cases. Here, FRICO has not shown a substantial grievance with the water court's holding and has alleged no error. To the extent that the trial courts have ruled inconsistently on this point of law, we await a case in which the appellant alleges that the trial court erred in some fashion. Hence, we hold that FRICO has not presented adequate grounds for an appeal on this issue. Therefore, we decline to address whether accretions to a net-losing ditch should be subtracted from historic beneficial consumptive use.[5]

IV. Conclusion
Accordingly, we decline to review the water court's holding regarding accretions to a net-losing ditch, and we affirm the remaining findings of fact, conclusions of law, and judgment of the water court.
NOTES
[1] Although the water court did not consider the tables and calculations in FRICO's post-trial decree, the water court considered, and ultimately rejected, the evidence upon which those tables and calculations were based. The water court analyzed FRICO's exhibit four, which showed the diversion records from 1887 to 1909. The water court stated that these records omitted diversions for several years and described the Lupton Bottom Ditch as ranging from six and a half miles to fifteen miles long. The water court noted that FRICO did not resolve these widely varying ditch lengths and therefore found the 1883 decree more persuasive because it was unambiguous.
[2] The water court order referred to a decree from "1873" in case number 6009. Our review of the record indicates that this is a typographical error, and the water court meant the 1883 decree in case number 6009.
[3] FRICO has not identified or entered into the record the case or cases that it considers inconsistent with the water court's ruling. In oral arguments, FRICO referred to a "403" case, but without more we cannot ascertain the specific case.
[4] We note that this case law predates the Colorado Appellate Rules. Nevertheless, this principle is embodied in C.A.R. 1(d).
[5] We note that C.A.R. 1(e) discusses the review of water matters, but its language does not negate the requirement that an appellant must present adequate grounds for an appeal.