# No. 17,024.

BLACK ET AL. *v.* TAYLOR ET AL.

(264 P. [2d] 502)

Decided November 16, 1953. Rehearing denied December 21, 1953.

Mr. Frank Stinemeyer, Mr. E. H. Stinemeyer, Mr. John M. Boyle, Mr. Glenn G. Saunders, for plaintiffs in error.

Mr. A. W. McHendrie, Mr. T. Lee Witcher, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

The parties hereto appear in this court in the same order as in the trial court, and we will hereinafter refer to them as plaintiffs and defendants.

Plaintiffs sought an injunction against alleged interference, by defendants, with water rights which they claimed to own, together with damages alleged to have been sustained by them as a result of that asserted unlawful interference. The issues were tried to the court; judgment was entered in favor of defendants; and plaintiffs, seeking a reversal of that judgment, bring the cause here by writ of error.

The parties agree that there is no dispute in the controlling facts, which, as stated by counsel for defendants, are as follows:

"The lands owned by plaintiffs lie north of and below those of defendants. Both tracts lie in a natural valley or swale running generally in a southerly to northerly direction, and bounded on each side by rather precipitous hills. The lands of both parties lying in this basin

constitute the cultivated and watered portion of the holdings of each. The lower part of the bottom of this valley or swale is quite extensively underlaid with sub-terranean waters, originating from seepage, underflow, and return waters from precipitation falling upon the higher lands lying to the south, east and west of these bottom lands. In its natural state the lower part of the bottom lands in this valley is largely water logged, the waters rising to the surface in places forming swamps and bogs covered with swamp grass, cattails, tule and other native vegetation common to that character of terrain. These ground waters come to the surface at numerous places, both in the lower part of the valley and in spots on each side thereof, in the form of what is commonly referred to in the testimony, as springs. Where the ground is not too saturated native hay mead-ows exist, subirrigated by the underlying ground waters. In the spots where the surface water collects, in the afore-mentioned swamps or bogs, they are distributed over other areas by means of drain or collecting and distribut-ing artificial ditches, and *two favorable results are at-tained, that is, portions of the bog or saturated areas are drained and the waters withdrawn therefrom are applied to the adjacent dry lands, thus reclaiming and making productive not only the swamp lands underlaid with this surplus water, but also reclaiming the higher lands, which without the application of these collected waters would be barren and unproductive.*

"The lands owned by both plaintiffs and defendants involved in this action are of the same character, subject to the same burdens, largely subirrigated and reclaimed by the same methods of drainage and distribution. The evidence shows that many years prior to the acts of de-fendants complained of in this action, the then owners of both of these tracts proceeded in substantially the same manner in reclaiming portions of the swamp or bog areas and applying the waters so collected by such drain-age ditches, to adjacent dry lands. So far as these efforts

are concerned, it is not disputed that in the prosecution of this effort, the plaintiffs and their predecessors constructed a large number of these drainage and distributing ditches, thereby intercepting, collecting and *carrying away from the swamp areas waters which were spread over adjacent lands which would be unproductive without irrigation.*

"At various times and from a quite early date continuing through the years, *the then owners and occupants of plaintiffs' lands constructed and extended such distributing and drainage ditches to collect, carry and use the waters of several springs arising upon plaintiffs' lands, for domestic and stock water purposes.* The exact date of the construction of each of these ditches is immaterial in this proceeding, inasmuch as *we concede that they were all constructed and in operation prior to the acts of defendants complained of.* The location, dimensions, occupation and use of these structures were testified to in detail by plaintiffs' witnesses, supported by maps, etc., introduced in evidence." (Emphasis supplied.)

Defendants admit that all of the waters involved in the controversy, "are seepage, return flow, percolating, ground and surface waters, all of which, if not intercepted or interfered with, will reach, become a part of and tributary to a natural stream of the State of Colorado."

Additional facts, which our examination of the record shows to be undisputed, are, that in 1950 defendants purchased the land adjoining plaintiffs' land; that in November of that year defendants constructed on their land two drainage canals, one of which ran generally east and west and the other north and south; that each of said canals was approximately 500 yards in length and of an average depth of 6 feet, and was constructed at the upper end of a bog and spring area in such manner that they continuously drained from said area a substantial continuous flow of water; and that the entire flow of water thus provided through said drainage

ditches was discharged into a drainage basin and watershed other than that in which plaintiffs' lands lie. By the diversion through said drainage ditches defendants reclaimed areas which could not otherwise have been used for agricultural purposes and the water thus diverted was made available for irrigation purposes on other lands.

Beginning in January following the completion by defendants of these new drainage ditches, plaintiffs observed a depletion in the water supply which for many years theretofore had been available to them. Shortly thereafter springs on their property began to dry up and there was a marked decrease in the quantity of ice which theretofore had always formed in certain areas of their land. The ditches which for many years had served their needs for irrigation and domestic purposes no longer carried the flow of water which previously had been available. They ultimately were without any water with which to supply their domestic needs, including the elaborate sanitary facilities which had been installed in their home. The water supply for irrigation purposes was wholly inadequate to accomplish the results which for many years had been attained by plaintiffs.

Defendants offered evidence, which was not contradicted, that the productivity of their land would be greatly increased by the operation of the drain ditches which would reduce the boggy areas of their land.

Plaintiffs base their claim upon the premise that they had acquired vested water rights by diversion of water and application thereof to beneficial use, and that defendants' right to maintain the newly constructed ditches was junior to the rights of plaintiffs. It further is argued that the fact that plaintiffs' alleged appropriations of water never were formally adjudicated, is of no consequence in the controversy between the parties.

Defendants deny that any valid appropriation of water ever was made by plaintiffs or their predecessors in interest. They assert, inter alia: "We insist that the

purpose and intention with which these structures were built, maintained and operated, was solely and entirely for the purpose of draining and thus reclaiming swampy, boggy and seeped areas in their lands. None of the things done by plaintiffs and their predecessors were for the purpose or with the intention of appropriating these waters for the irrigation of other lands. Also, the transportation of these waters by means of these drain ditches was for the purpose only and entirely, of carrying away such waters from the swampy and bogged area. * * *"

Pertinent portions of the findings and judgment entered by the trial court are as follows: "That each and all of the ditches, drains, reservoirs and other structures constructed by plaintiffs and their predecessors in interest and title were constructed, maintained and operated for the purpose and with the intention and design of draining and making productive their said lands, and not with the intention, purpose or design of making any appropriation for beneficial use of the waters so intercepted, captured and collected in and by said structures."

The court further found that the amount of water carried away by the drainage ditches of defendants was, "so small in amount as to be negligible, insofar as any injurious effect upon the water supply of the lands of plaintiffs is concerned, and did not and do not, to any material degree, interfere with, impair or diminish the natural flow of said underground waters to and beneath the lands of plaintiffs." The opinion of the trial court contains, inter alia, the following statement: "The issues appear to have commingled two separate matters; one the claimed 'vested right' to irrigation waters by virtue of a prior appropriation and beneficial use, and the other concerns appropriation of waters for 'domestic uses.' The 'appropriation' applies to irrigation waters only. 'Domestic' uses must be determined by virtue of the modified civil law rule, which recognizes the rights of

dominant and servient estates. Sometimes, without objection, the two are considered and determined together." While this assertion is not included within the formal judgment signed by the court, it nevertheless indicates the misconception of the law which formed the basis of that judgment.

The trial court held that plaintiffs had failed to prove: (a) A valid appropriation of the waters claimed by them; (b) that defendants had wrongfully and "in excess of their rights to protect, preserve and utilize their lands, performed the several acts complained of in constructing the ditches referred to and described in said amended complaint"; and (c) that defendants' conduct had materially interfered with or injuriously affected the rights of plaintiffs. The court concluded, inter alia: "That defendants in the construction, maintenance and operation of the ditches referred to and described in said amended complaint, had a clear, legal and unassailable right to reclaim their said lands by the construction, maintenance and operation of said ditches, in the manner and to the extent shown by the pleadings and evidence herein."

Questions to be Determined.

First: *Where lands contain seepage, return flow, percolating ground and surface waters, which if not intercepted or interfered with will become a part of and tributary to a natural stream; and where the owner of such lands digs and operates distributing and drainage ditches to collect, carry and use such water by diversion thereof for irrigation of dry land and for domestic purposes; can the validity of his appropriation of the water thus beneficially used successfully be challenged on the ground that by said diversion of water he drained certain boggy lands and thus reclaimed the swamp areas which theretofore were unproductive?*

██ This question is answered in the negative. The trial court erred in holding that there was no intention on the part of plaintiffs, or their predecessors in interest,

to make an appropriation for the beneficial use of the water intercepted. The fact, that the system of ditches constructed on plaintiffs' lands accomplished more than one favorable result, cannot be the basis for a determination that only one of such favorable results was intended.

No authority need be cited in support of the proposition that in all branches of the law, persons intend the reasonable, natural, and probable consequences of their acts. It is not disputed in any manner whatever that plaintiffs in this case: (1) Diverted water from its natural course and transported it to a place of beneficial use; (2) applied the water on dry lands for the irrigation of crops which otherwise could not have been produced; (3) carried water into a home for domestic use; and (4) created facilities for the use of said water in connection with their livestock operations. Neither plaintiffs nor their predecessors in interest were necessarily required to make formal announcement concerning their intention to make beneficial use of the water diverted, carried and applied to any of these purposes. Their acts themselves are a demonstration of this intention. After the lapse of many years the existence of this intention cannot successfully be denied because another beneficial result, namely, reclamation of boggy ground, also was accomplished.

Second: *Did the trial court err in concluding that the doctrine of "appropriation" of water applied to irrigation waters only, and that domestic uses of water must be determined by the "modified civil law rule which recognizes the rights of dominant and servient estates"?*

This question is answered in the affirmative. Section 6, Article XVI, of the Colorado Constitution, provides, inter alia: "The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the

same purpose; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall have the preference over those claiming for any other purpose * * *."

■ Some basis for confusion of thought may be found in the opinion of this court in *Montrose Canal Co. v. Loutsenhizer Ditch Co.,* 23 Colo. 233, 48 Pac. 532, in which the court said, with reference to the domestic use of water: "The use protected by the Constitution is such use as the riparian owner has at common law to take water for himself, his family or his stock, and the like." However, following our opinion in *Town of Sterling v. Pawnee Ditch Extension Co.,* 42 Colo. 421, 94 Pac. 339, there can be no doubt concerning the right to appropriate water for domestic purposes and the interpretation to be given the constitutional preference relating to such appropriations. Such water user cannot be preferred over a prior appropriator for irrigation purposes without fully compensating the senior appropriator for the loss sustained by invoking the preference. Our court said in that opinion: "The contention of counsel for defendants that water cannot be diverted from a stream for domestic use, except by towns and cities, by one not a riparian owner, is not tenable. The right to water appropriated for domestic purposes does not depend upon the *locus* of its use for those purposes."

■ Third: *Is it essential to the acquistion of a water right that the claimant must file maps of his ditches, participate in water adjudications, and secure a decree of priority?*

This question is answered in the negative. As between parties whose rights to the use of water never have been formally adjudicated, neither can claim an advantage over the other by reason of the absence of any decreed priorities in connection with the water in controversy. Our court said in *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453: "Whether or not ditches were constructed

in accordance with the filings of maps and statements in compliance with statutory provisions, or whether any map and statement was filed or any new or enlarged ditch was actually constructed are matters of evidence only, and not of the substance of the appropriation. Water rights are not based on the filings of maps or statements. Such filings do not constitute appropriations nor lack thereof invalidate them. The statute providing that appropriators shall file map and statement nowhere declares such filings are essential to a valid appropriation; it declares only that a map and statement so filed shall be prima facie evidence in any court of intent to appropriate."

■ Fourth: *Did the trial court err in holding that defendants "had a clear, legal and unassailable right to reclaim their said lands by the construction, maintenance and operation of said ditches, in the manner and to the extent shown by the pleadings and evidence herein"?*

This question is answered in the affirmative. It is clear that the waters in dispute were subject to appropriation under the well-established principles of law governing that subject. *Safranek v. Town of Limon,* 123 Colo. 330, 228 P. (2d) 975, and cases therein cited.

Plaintiffs had made a valid appropriation of water for irrigation and domestic uses long prior to the construction by defendants of the drainage canal which was used to divert a substantial quantity of water from the watershed through which it naturally would pass. The water thus removed from plaintiffs' source of supply was used by defendants to irrigate lands owned by them in a different drainage basin. We do not say that defendants have no right to reclaim their boggy land by use of a drainage canal. The evidence discloses that there is a 150 foot drop in elevation from the point of the objectionable drain ditch to the south boundary of plaintiffs' land, and a steady decrease in elevation from that point to plaintiffs' installations which supplied their water needs. The reclamation of defendants' boggy

ground cannot be accomplished by removing excess water into another watershed and thereby cutting off the normal flow of water upon which a downstream prior appropriator relies.

 Mr. A. W. McHendrie, who appears in this case as counsel for defendants, very clearly stated the applicable law in an article published in vol. 13, Rocky Mountain Law Review at page 1, from which we quote as follows: "As heretofore observed the Colorado courts have gone further than those of any other western state in applying the doctrine of appropriation to ground waters, as well as to surface waters. The law in Colorado governing the first classification above suggested, i.e., underground water which, if not intercepted, will ultimately find their way to a natural stream, is well settled. It has been frequently held by our appellate courts, from a very early date down to the present time, that all underground waters which by flowage, seepage or percolation will eventually, if not intercepted, reach and become a part of some natural stream either on or beneath the surface, are governed and controlled by the terms of the Constitution and statutes relative to appropriation, the same as the surface waters of such stream. This rule is so well settled and so well known by all irrigationists, irrigation attorneys, and engineers, that it does not seem necessary to quote from or analyze the many decisions of our courts of last resort in which it is so held."

We cannot agree that the diversion of water by defendants, of which plaintiffs complain, was so small as to have no injurious effect upon plaintiffs' water supply. We think the contrary conclusively appears.

The judgment is reversed with directions to grant injunctive relief consistent with this opinion, and the cause is remanded for further proceedings, if any, as may be sought to effectuate the views herein expressed.

MR. JUSTICE CLARK and MR. JUSTICE BRADFIELD not participating.