## No. 19,483.

THE CITY OF COLORADO SPRINGS, ET AL. *v.* THOMAS L. BENDER, ET AL.

(366 P. [2d] 552)

Decided November 27, 1961.

Mr. F. T. HENRY, for City of Colorado Springs, Mr. KARL R. ROSS, for The South Suburban Water Company, Mr. BEN S. WENDELKEN, for The Broadmoor Hotel, Inc., Attorneys, for plaintiffs in error.

Messrs. MOSES & DESOUCHET, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

THIS action was brought in the district court by the above named defendants in error against the plaintiffs in error for an injunction restraining the latter from diverting water from certain underground water resources in alleged violation of the rights of prior appropriation claimed by plaintiffs. They also sought damages. We will refer to defendants in error as "plaintiffs" or "Bender," and to plaintiffs in error by name or as "defendants" or "the city." The issues presented on this writ of error relate only to the injunction granted; the claim for damages having been reserved for further hearing and determination by the court.

The case involves the withdrawal of water by the litigants from an aquifer which is approximately four miles in length and of a width indicated by the location of the many wells drilled or dug into the aquifer throughout its length, all as shown by exhibits received in evidence. The land above the aquifer slopes in a southerly direction at about thirty feet to the mile. The distance in depth from the surface to the saturated materials of

the aquifer is about the same throughout the length thereof when measured at the deepest cross-section points. It is narrower at the bottom than at the top, or high water level, and thus wells near the edge of the aquifer tap where the saturated materials are of lesser depths than at or near the center. It also follows that the "draw-down" is more rapid as the water level is lowered.

The trial court found that "said aquifer is a flowing aquifer; that the water of said aquifer is a part of Fountain Creek or directly tributary thereto and is subject to appropriation under and in accordance with the laws of the State of Colorado." No issue is taken with this finding. The trial court found, inter alia, that plaintiffs owned seventy-seven acres of land lying above or adjacent to the aquifer, and "in 1930 or 1931 appropriated approximately 200 acre feet of water from the aquifer for the irrigation of about fifty acres of pasture and cultivated lands, and have since continued to so use said water." The court found that in 1954 defendants made an appropriation of water from the aquifer and began pumping; that the said water was applied to beneficial use for domestic purposes at places remote from the aquifer. The court in great detail directed attention to the effect of pumping operations by defendants on the availability of water for the use of plaintiffs who were senior appropriators, and in all references to the water withdrawn, the amount thereof is described in "acre feet." The court determined that when the defendants pumped water during the time it was needed by plaintiffs for irrigation purposes, it was not available because the water table was lowered below the intake of plaintiffs' pumping facilities. It is unnecessary for us to analyze in detail the numerous quantities of water withdrawn by the parties, and by others, at various seasons of the year, all of which were measured in "acre feet."

Our determination of the action before us makes it unnecessary to do more than refer to the provisions of

the decree, to which we hereafter address ourselves. The court decreed that defendants "* * * are hereby jointly and severally enjoined and restrained from diverting water from any and all wells, * * * having an appropriation date subsequent to 1931, for and during the irrigation season, to-wit: From the first day of April, 1960, to the first day of October, 1960, and for a like period in each and every year thereafter, from that source of water described herein and referred to as 'the aquifer' * * *."

The parties have drilled a number of wells into this ancient underground channel of Fountain Creek which has long been covered over by the processes of nature, so that the lower portion of the channel is sufficiently pervious to transmit water and the overlying portion is susceptible to use for farming and other purposes. The water flows in the underlying portion of the channel from north to south, and that which is not withdrawn by pumping from the wells returns to Fountain Creek several miles south of the northern point of entry to the aquifer.

We think it proper at this point to bear in mind some well-defined legal principles which are pertinent to the problems presented. This is an action *in personam.* Other appropriators of the waters of Fountain Creek are not parties to this litigation and consequently the relationship of their water rights to those of the litigants are not considered or resolved.

As already shown, the water in the channel making up the aquifer, is a part of the flow of Fountain Creek. It is a well-established principle in this jurisdiction that all waters are part of a natural water course, whether visible or not, constituting a part of the whole body of moving water. *Safranek et al. v. Town of Limon,* 123 Colo. 330, 228 P. (2d) 975. The relative priorities among appropriators of such waters are to be protected by the judiciary even though they have never been made the subject of a statutory adjudication. *Black et al. v.*

*Taylor, et al.,* 128 Colo. 449, 264 P. (2d) 502. The opinion in the last cited case also approved the following statement which is pertinent to the present controversy:

" \* \* \* It has been frequently held by our appellate courts, from a very early date down to the present time, that all underground waters which by flowage, seepage or percolation will eventually, if not intercepted, reach and become a part of some natural stream either on or beneath the surface, are governed and controlled by the terms of the Constitution and statutes relative to appropriation, the same as the surface waters of such stream. \* \* \*"

■ At his own point of diversion on a natural water course, each diverter must establish some reasonable means of effectuating his diversion. He is not entitled to command the whole or a substantial flow of the stream merely to facilitate his taking the fraction of the whole flow to which he is entitled. *Schodde v. Twin Falls Land & Water Co.,* 224 U.S. 107, 119, 32 S. C. 470, 56 L. Ed. 686. This principle applied to diversion of underflow or underground water means that priority of appropriation does not give a right to an inefficient means of diversion, such as a well which reaches to such a shallow depth into the available water supply that a shortage would occur to such senior even though diversion by others did not deplete the stream below, where there would be an adequate supply for the senior's lawful demand.

■ Another principle to be remembered in a fact situation such as that presented here, is that appropria‧ tions are all made for *direct and immediate application to beneficial use.* In this jurisdiction such appropriations are for a *rate of flow,* and not for a prescribed quantity of water. *Rate of flow* is not measured in *acre feet.* The appropriator becomes entitled to take water for a beneficial use under direct appropriation, *during whatever period he can make beneficial use of the water, at the rate of flow* to which he has become entitled. If the

period during which the water is needed in a particular year is short, then the total volume of water taken will be small. If the period is long and water continues to be available within the date of priority of the water right, then the amount taken will be larger. "Acre foot" limitations, or awards so measured, are not applicable to appropriations for direct and immediate use. No appropriation for storage purposes is involved in this litigation and for that reason references to the volumetric awards and limitations involved in storage rights are neither appropriate nor applicable.

■ Another basic consideration, with which the trial court's decree is not in harmony, is the well-established principle that there is no direct use season, nor is there a season set apart for storage. The variable climate of Colorado from one year to another, and the widely varying growing seasons occurring in various areas of the state, furnish continuing climatic support to the rule of law announced in this respect. Furthermore, under our law there can be no apportionment of available supplies of water in times of short supply, instead, junior appropriators may be shut off if necessary to supply the priorities of senior appropriators, except where juniors who are so situated that shutting them down would not result in improving the water supply of senior appropriators.

■ Because of the greatly increased frictional impediment to the passage of water as it moves in an underground medium, as opposed to movement in a surface channel, the relationships between upstream and downstream appropriators are more difficult of administration where the disputed rights of underground water appropriators are involved, than where only surface appropriations are questioned. Nevertheless the legal principles applicable are the same in either case. Fundamental among the principles applicable here is the rule that a junior appropriator may not divert the water to which he is entitled by any method or means

the result of which will be to diminish or interfere with the right of a senior appropriator to full use of his appropriation.

Application of the above principles to the case at bar will require some exertions by the trial court not yet undertaken. The fact that they might better be undertaken by administrative agencies of government under authority of legislative action, cannot be a sufficient reason for failure of the judiciary to enforce property rights as protected by existing law.

Following such additional evidence as the litigants may desire to present, the following things must be done:

(1) The rate of flow of senior and junior appropriators whose rights are involved, together with the dates of priority of each appropriation, must be determined.

(2) The elevation of water in the aquifer at which each junior appropriator must cease to divert water in order to meet the demands of a senior appropriator must be fixed.

(3) In determining the facts mentioned [under (2)] the conditions surrounding the diversion by the senior appropriator must be examined as to whether he has created a means of diversion from the aquifer which is reasonably adequate for the use to which he has historically put the water of his appropriation. If adequate means for reaching a sufficient supply can be made available to the senior, whose present facilities for diversion fail when water table is lowered by acts of the junior appropriators, provision for such adequate means should be decreed at the expense of the junior appropriators, it being unreasonable to require the senior to supply such means out of his own financial resources. This reasonable provision of the law recognizes that the nature of underground aquifers is such that they sometimes have very great depth. In such circumstances an economical and productive diversion might be made by a junior appropriator of a very high value use with

which a senior could not compete; and while the junior might well afford the expense of a deep withdrawal, and even leave an adequate volume of water available for a senior, yet the expense of bringing it to the surface would be beyond the reasonable economic reach of the latter. Such situations do not ordinarily develop with regard to surface stream developments.

■ A determination of these questions is necessary. The court must determine what, if anything, the plaintiffs should be required to do to make more efficient the facilities at their point of diversion, due regard being given to the purposes for which the appropriation had been made, and the "economic reach" of plaintiffs. The plaintiffs cannot reasonably "command the whole" source of supply merely to facilitate the taking by them of the fraction of the entire flow to which their senior appropriation entitles them. On the other hand, plaintiffs cannot be required to improve their extraction facilities beyond their economic reach, upon a consideration of all the factors involved.

When the dates of priorities and the rate of flow connected with each have been established, the court should give consideration to these matters and make such findings as shall appear to be reasonable.

The judgment is reversed and the cause remanded with directions for further proceedings consistent with the views above expressed.

Mr. Justice Pringle not participating.