Mr. Justice Moore
delivered the opinion of the Court.
Plaintiff in error, to whom we will refer as the district, claimed certain water rights in a statutory supplemental adjudication of water rights which was conducted in the trial court. The defendant in error, hereinafter referred to as the power company, protested allowance of the claims made by the district by filing a motion to dismiss them. The trial court granted the motion, denied the motion of the district for a new trial, and entered an appropriate judgment to review which the district is here on writ of error.
The claims were three in number and asserted rights in and to (1) waters of the South Fork of White River and its tributaries; (2) waters of Wagonwheel Creek and its tributaries; and (3) waters of Buck Creek and its tributaries.
The language contained in each of the claims, which is pertinent to the question to be decided, relates to the nature of the beneficial use to which the water in dispute has allegedly been applied. The allegation is that:
“For the purposes herein claimed, water is not to be diverted from the natural stream, but is to be preserved and kept in the stream to the extent necessary for the preservation of fish life and the propagation of fish.”
*333 In each of the claims the areas along the streams where the water rights were allegedly initiated were described, together with the volume of water claimed measured in cubic feet per second of time. The date claimed for the initiation of all the appropriations is set forth as June 7, 1937. The claims all contain the assertion that the streams involved, “* * * have been a habitat for fish and the propagation and preservation thereof for over 40 years, and have been used by the public to fish and for the recreational activities connected therewith during all of said period of time.”
The district appeared in the adjudication proceedings and filed the disputed claims under the powers allegedly conferred by C.R.S. 1963, 150-7-5 (10) which, among other powers placed in the district, includes the following:
“To file upon and hold for the use of the public sufficient water of any natural stream to maintain a constant stream flow in the amount necessary to preserve fish, and to use such water in connection with retaining ponds for the propagation of fish for the benefit of the public.”
As grounds for reversal of the judgment counsel for the district assert that:
“In the Colorado system of priorities it is necessary if one is to ‘hold’ the right to use water, that one put it to beneficial use, and, at some time to adjudicate the same. It seems apparent, that if the District is to file upon waters and hold the same, it must, necessarily, apply to the appropriate Court in an adjudication proceedings for the purpose of adjudicating such waters. The District was in this case exercising a power, and in connection therewith, carrying out the concomitant duty of protecting its position.
“In pursuing this power the District is entitled to adopt and show in proof of its claims the acts of the public, if any, evidencing the intention of that public to appropriate the necessary portion of such waters for *334 recreational purposes. A portion of these acts, all open, notorious and well known and publicized, indicating such intention are as follows:
“1. The construction of camp grounds and access roads and trails.
“2. The construction of fish hatcheries and the stocking, at public expense, of the rivers and streams affected by the claims.
“3. The utilization, by the general public, of such streams for fishing purposes.
“4. The studies of the Colorado Game and Fish Department, the Forest Service, the Bureau of Sport Fisheries and Wildlife, and others, conducted on the streams, determining what flows are necessary to sustain fish life, and provide for natural propagation.”
On behalf of the power company it is argued that:
“1. The purported appropriation of the flow of a stream for fish maintenance and recreational purposes is not an appropriation, and the attempted use thereof is not a beneficial use of water.
“2. This was and is a proceeding of a special and statutory nature, and a claim must comply with the statute in order to be cognizable therein. A claim for the maintenance of the flow of a stream cannot be in compliance with the statute, and the Trial Court could not enter a decree based thereon. Therefore, the claims were properly dismissed.
“3. Neither the District nor any other person or entity can appropriate water flowing in the stream for the use of the public as against a diversion and appropriation of water for a beneficial use under the laws and Constitution of Colorado, and the Legislature did not attempt to give the District such unconstitutional powers.”
For the purpose of determining this controversy it is unnecessary to treat the arguments advanced under paragraphs numbered '2 and 3 above.
 The argument of the attorneys for the district *335 consists of two basic propositions. One is that the use of flowing water in a stream is an appropriation of water; and the second is that such a use of water is a “beneficial use.” Numerous opinions of this court have defined the essential requirements of an “appropriation” of water. We direct attention to Denver v. Northern Colorado Water Conservancy District, 130 Colo. 375, 276 P.2d 992, in which we find the following pertinent language:
“Further, the rule is elementary that the first essential of an appropriation is the actual diversion of the water with intent to apply to a beneficial use. * * * Water can be actually diverted only by taking it from the stream. * * *” (Emphasis supplied.)
In Board of County Commissioners v. Rocky Mountain Water Company, 102 Colo. 351, 79 P.2d 373, we find the following:
“It should 'be observed further that as the act of diversion and the act of applying the water diverted to a beneficial use, whether performed by the same or different persons, are both necessary to constitute an appropriation, so the continued existence of the appropriation depends on the continuance of both, diversion and beneficial application. * * *” (Emphasis supplied.)
This case was cited with approval in City and County Denver v. Miller, et al., 149 Colo. 96, 368 P.2d 982.
There is no support in the law of this state for the proposition that a minimum flow of water may be “appropriated” in a natural stream for piscatorial purposes without diversion of any portion of the water “appropriated” from the natural course of the stream. By the enactment of C.R.'S. 1963, 150-7-5 (10) the legislature did not intend to bring about such an extreme departure from well established doctrine, and we hold that no such departure was brought about by said statute.
Cases relied on by the district, in which it is held that the diversion of water into retaining ponds for fish *336 culture is a diversion for a beneficial use, are clearly distinguishable from the case under consideration. The case of Schodde v. Twin Falls Land and Water Co., 224 U.S. 107, 56 Law Ed. 686, contains language applicable to the instant controversy. In that case the controversy arose in Idaho. Plaintiff was the owner of certain land on the banks of the Snake River and an appropriator of certain quantities of water for use on said lands. The amount appropriated was alleged to be 1250 miner’s inches. The water was diverted from the stream by means of a waterwheel or wheels in the river which would lift the water to a sufficient height for distribution to the land. There was a total of eleven of such wheels varying in height from 24 to 34 feet. The flow of the river, controlled by wing dams, would power the wheels causing them to revolve and carry the water in buckets to the height where it would be emptied in flumes and taken by ditches to the lands of the appropriator. The defendant constructed a dam across the river at a point about 9 miles below plaintiff’s land. This water was utilized for irrigation of about 300,000 acres of land and supplied the needs of about 5000 people. The plaintiff alleged that the backing up of the water caused by the dam deprived him of the power by virtue of destroying the current in the river 'by which the waterwheels were used to raise the water to permit the irrigation of his lands.
The contention of the plaintiff that he was entitled to have the flow of the stream maintained in such manner as to power the waterwheels by which he raised the water, was rejected by the Supreme Court of the United States. It was pointed out in that opinion that the right to the maintenance of the “flow” of the stream is a riparian right and is completely inconsistent with the doctrine of prior appropriation. We quote from the opinion the following:
“We say this because it may not be doubted that the application here sought to be made of the doctrine of *337 riparian rights would be absolutely destructive of the fundamental conceptions upon which the theory of appropriation for beneficial use proceeds, since it would allow the owner of a riparian right to appropriate the entire volume of the water of the river, without regard to the extent of his beneficial use.”
The opinion quotes from Hutchinson v. Watson Slough Ditch Co. Limited, 16 Ida. 484, 101 Pac. 1059, the following pertinent language:
“In other words, there is no such thing in this State as a riparian right to the use of waters, as against an appropriator and user of such waters who has pursued the' constitutional and statutory method in acquiring his water right. In order to acquire a prior or superior right to the use of such water, it is as essential that a riparian owner locate or appropriate the waters, and divert the same, as it is for any other user of water to do so.”
The foregoing is dispositive of the controversy and there is no need to discuss the other arguments which are ably presented by counsel for both sides.
The judgment is affirmed.