## No. 24580

Agnes Lamont, George J. Lamont, and James D. Lamont v. The Riverside Irrigation District and The Riverside Reservoir and Land Company

(498 P.2d 1150)

Decided July 10, 1972. Rehearing denied July 24, 1972.

William R. Kelly, John W. O'Hagan, for plaintiffs in error.

Earl W. Haffke, Doyle T. Johns, Jr., for defendants in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The Lamonts, plaintiffs, brought this action against the defendants, Riverside Irrigation District and The Riverside Reservoir and Land Company, to quiet title and enjoin interference with alleged rights in certain land and ground water. The facts show that the Lamonts own land which lies below the defendants' reservoir and between the reservoir and the South Platte River. Due to reservoir seepage, the Lamonts enjoyed a lush, subirrigated pastureland for a period in excess of fifty years. In 1964, the defendants dug six wells along the right of way of their canal. This canal crosses the Lamont property below the reservoir but above the Lamont

pasture. The effect of pumping from the wells, then, has been to prevent the reservoir seepage from reaching plaintiffs' land, thereby causing the pasture to dry up.

The Lamonts' complaint was brought pursuant to R.C.P. 105(a) [C.R.C.P. 105(a)] which provides for a complete adjudication of all rights between the parties with respect to real estate. In this complaint there appear numerous theories for recovery: *inter alia*, the Lamonts allege (1) that any rights to the water in question have been relinquished by the Reservoir Company through fifty years of adverse use by the plaintiffs; (2) that any rights of the Reservoir Company were conveyed in 1908 to the plaintiffs' predecessor in title by a quitclaim deed to the Day Seepage Ditch; (3) that, in the alternative, if the Reservoir Company had no transferrable claim of right to these waters, the plaintiffs have put them to beneficial use over a period of years and thus are prior appropriators under the laws of the State of Colorado; (4) that the defendants' wells are in violation of an express covenant embodied in a 1942 conveyance of a right of way to the Irrigation Company; and (5) that two of defendants' wells are on Lamont property and thus constitute an actual physical trespass to land.

After presentation of copious testimony and exhibits, the trial court in entering judgment made extensive findings of fact and conclusions of law. On the basis of its findings and the applicable law, it dismissed the complaint. We affirm its judgment.

Only the findings of fact which are relevant to the instant appeal are delineated here. The court found:

"The waters involved in this action are underground and the primary source is from the water stored in Riverside Reservoir. Such waters percolate and migrate in and through the soil in a southerly and southeasterly direction from the reservoir and if not intercepted and diverted are flowing to and are tributary to the South Platte River. The quantity of such waters that percolate and migrate underground in each year from the Riverside Reservoir to the South Platte River amounts to thousands of acre-feet of water.

"The plaintiffs have made no appropriation of any of the waters involved in this action. Plaintiffs have admitted, and the court so finds, that they had no diversion works or measuring devices or other means to determine the quantity or rate of flow of water for which they attempt to lay claim. The culverts placed in the Day Seepage Ditch by the plaintiffs do not constitute diversion works but merely serve as bridges for crossing the Day Seepage Ditch where it runs through their lands. There was some testimony that the plaintiffs placed flashboards at the culverts for the purpose of raising the water level to flood their meadow lying below the Day Seepage Ditch, but there was no issue pleaded or joined that the plaintiffs at any time constructed or maintained diversion works measuring devices or other man-made means by which plaintiffs diverted and applied to beneficial use a certain volume of water to which they attempt to lay claim . . . ."

and that the five wells which are used for the pumping are located on property of the defendants.

## I. Derivative Title

The Lamonts make two claims of right to the water here involved which, if valid, could only come about if the Reservoir Company had a right to the seepage water and conveyed or relinquished it to the Lamonts. First, the Lamonts assert that they have claimed this water openly and adversely to the Reservoir Company for the requisite statutory period of time, thus obtaining a prescriptive right to the water in question. Second, the Lamonts argue that a 1908 quitclaim deed conveying a drainage ditch, initially constructed to alleviate flooding of the pasture, included the conveyance of a right to the seepage water claimed here. We find these arguments untenable.

This court has held consistently — and, indeed, frequently — that reservoir seepage which would be tributary to a natural stream, if allowed to flow unarrested, is a part of that natural stream and thus the property of the People of the State of Colorado under article XVI, section 5 of the Colorado Constitution, subject to decreed priorities. *Fort*

*Morgan Res. & Irr. Co. v. McCune,* 71 Colo. 256, 206 P. 393; *Trowel Co. v. Bijou District,* 65 Colo. 202, 176 P. 292; *Durkee Ditch Co. v. Means,* 63 Colo. 6, 164 P. 503; *Comstock v. Ramsay,* 55 Colo. 244, 133 P. 1107. This water is subject to appropriation in the same manner as other water in a natural stream. *Comstock v. Ramsey, supra.* However, it is not the property of the reservoir and thus it is distinguishable from irrigation waste water, *Tongue Creek Orchard Co. v. Orchard City,* 131 Colo. 177, 280 P.2d 426, or natural seepage. *Genoa v. Westfall,* 141 Colo. 533, 349 P.2d 370; *Nevius v. Smith,* 86 Colo. 178, 279 P. 44. Accordingly, the Reservoir Company had no right to this seepage in the absence of a separate appropriation thereof. The Lamonts, therefore, could not acquire any right from the Reservoir Company either by prescription or by conveyance.

 The Lamonts urge one further argument on this point. They contend that even if the Reservoir Company had no right which could be transferred under the 1908 conveyance, the Company, having purported to transfer, is now estopped to deny the Lamonts' water right. This argument might have some merit if the proofs bore out counsel's assertions. However, we have examined the document in question and we do not perceive it as attempting to transfer to plaintiffs' predecessor any water right whatsoever. This document is a simple quitclaim deed which transfers a drainage ditch and any appurtenant rights. The existence and nature of any appurtenant rights is neither alleged nor proved.

## II. Appropriation by the Lamonts.

 Pleading in the alternative to the foregoing arguments, the Lamonts claim that if the seepage in question is part of a natural stream, the plaintiffs have made an appropriation of this seepage which predates that of the defendants. The plaintiffs here concede the trial courts' finding that they have made no diversions. Nevertheless, they argue that the nature of the diversion is unimportant so long as the water has been put to beneficial use, citing *Genoa v. Westfall, supra.* It is true that some of the court's language —

and a Nevada case cited with approval in the *Genoa* opinion — suggests that something so simple as stock watering may constitute diversion and appropriation. However, the facts of that case clearly show that the plaintiff there had made diversions of measurable amounts of water by means of wells and pumps. Other cases, both before and after *Genoa,* have held that the first essential of an appropriation of water is the actual diversion of water with intent to apply it to a beneficial use. *Colorado River Water Conservation District v. Rocky Mountain Power Co.,* 158 Colo. 331, 406 P.2d 798; *Safranek v. Limon,* 123 Colo. 330, 228 P.2d 975. Further, the injunction requested by the Lamonts could not be granted even if there were an appropriation, since plaintiffs require the entire flow in order to put a minuscule amount to a beneficial use. *Fellhauer v. People,* 167 Colo. 320, 447 P.2d 986; *Colorado Springs v. Bender,* 148 Colo. 458, 366 P.2d 552.

### III. Contract and Trespass Claims.

The plaintiffs' remaining claims are (1) that defendants' wells were constructed in breach of a covenant not to excavate which was embodied in a 1942 conveyance of land and rights of way and (2) that defendants' wells are located on plaintiffs' property and thus constitute a physical trespass. As to the first of these, the 1942 conveyance grants the Irrigation Company a small tract of land and a right of passage across plaintiffs' land for purposes of maintaining and repairing the Company's canal. The covenant relied upon by the plaintiffs refers to this right of way; it does not restrict Company activity on the banks of its ditch, the site of the disputed wells. As to the second of these, the trial court expressly found that the defendants' pumping wells were located on property owned by the defendants. There was competent evidence to support the trial court's findings, hence we will not disturb those findings. As to the defendants' one non-pumping well, the trial court found that it was on defendants' canal right of way across plaintiffs' land. Since plaintiffs offered no evidence of damage, beyond the loss of water — a loss to which this well did not

contribute — we do not consider the plaintiffs' allegation of trespass in regard to this well.

### IV. The Defendants' Cross-appeal for Costs.

At the close of the trial the defendants moved (1) that the plaintiffs be taxed costs for the money expended by defendants to prove that the seepage here involved was tributary to the South Platte, (2) that the court certify that in excess of four witnesses were required in this proof, and (3) that the plaintiffs pay the fees of defendants' expert witnesses. The trial court denied this request and defendants brought cross-appeal.

Defendants' claim for reimbursement on the proof of the tributary nature of the seepage water is bottomed on the former R.C.P. 37(c) which provided that if a request for admissions (R.C.P. 36) is denied, the requesting party, on proof of the fact asserted,

"may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made."

We have previously held that the awarding of costs is within the sound discretion of the trial court. *Superior Distributing Corporation v. White,* 146 Colo. 595, 362 P.2d 196; *Willoughby v. Willoughby,* 71 Colo. 356, 206 P. 792. Under R.C.P. 37(c) there must be something more than simply a refused admission and its subsequent proof. *Superior Distributing Corp. v. White, supra.* The absence of an express finding of good faith on the part of the plaintiffs does not entitle the defendants to recover, since such a finding is inherent in the trial court's denial of the motion.

The denial of defendants' claim for fees of additional witnesses similarly was within the trial court's discretion under R.C.P. 37(c). If the court properly could refuse witness fees under R.C.P. 37(c), *a fortiori,* it could certainly refuse to certify that more than the statutory four witnesses were required. C.R.S. 1963, 33-1-12.

 Finally, as to expert witness fees, generally, the statute allows the court to award the costs of expert witnesses in amounts which are commensurate with their expertise. 1965 Perm. Supp., C.R.S. 1963, 56-6-2. It does not require that the amounts actually paid to the expert be assessed as costs. This also, is addressed to the sound discretion of the trial court. *Leadville Water Co. v. Parkville Water District,* 164 Colo. 362, 436 P.2d 659.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE dissenting.

MR. JUSTICE HODGES not participating.